727 So.2d 695 (1999)
MOORES PUMP AND SUPPLY, INC., Plaintiff-Appellee,
v.
Allen Dale LANEAUX, Defendant-Appellant.
No. 98-1049.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
Rehearing Denied March 10, 1999.
*696 Stephen J. Oats, Lafayette, for Moores Pump and Supply, Inc.
Gregory Bryan Dean, Opelousas, for Allen Dale Laneaux.
Before DOUCET, C.J., DECUIR, and PETERS, Judges.
DECUIR, Judge.
This is an appeal by Allen Dale Laneaux from the judgment of the district court ordering a preliminary injunction, pending a full hearing on the merits, restraining and prohibiting Laneaux from soliciting any customer of Moores Pump & Supply, Inc., recruiting Moores' employees, or otherwise engaging in packer or related operations for a competitor in Moores forty-three parish service area.

FACTS
Moores is engaged in the business of new and used packer sales, repairs, and rentals, squeeze jobs, gravel pack jobs, down hole service tool sales and rentals, and water filtering ("packer" operations). These services *697 relate to oil field exploration and development. On August 12, 1996, Moores hired Laneaux to work in packer operations. On August 29, 1996, Laneaux signed a non-compete agreement which provides in pertinent part:
Individual agrees that for a period of one (1) year following the date of employment termination, he will not directly or indirectly assist, advise, engage in, carry on or be interested in, either on his own account or as a principal, agent partner, shareholder, director, officer, employee, or consultant, of any other person, firm, corporation, business or other entity engaged in the same business as Company in ...
3.
Individual further agrees that for a period of one (1) year following the date of employment termination, he will not in the areas (parishes/counties) named in paragraph 2, above, or through any medium whatever, either on behalf of himself or another, directly or indirectly solicit business in New and Used Packer Sales, Repairs, & Rentals, New and Used Packer Parts Sales, Squeeze Jobs, Gravel Pack Jobs, Downhole Service Tools Sales & Rentals, Water Filtering, or any and all businesses in which Company is engaged on the date of employment termination, or any such similar business as that of the Company from any person or persons who were customers of Company while Individual was in its employ, or who, as customers, were contacted by Individual while in the service of Company.
4.
Individual further agrees that for a period of one (1) year following the employment termination date, he will not induce or attempt to influence any employee of Company to terminate his employment with Company.
The agreement, in paragraph 2, lists each parish in Moores' forty-three parish service area. In addition, the agreement specifies liquidated damages in the amount of $5,000.00.
On December 21, 1997, Laneaux voluntarily terminated his employment with Moores. On December 23, 1997, he began employment with Sand Control Systems, Inc., a business similar to Moores that competes with Moores in the parishes designated by the non-compete agreement.
On January 17, 1998, Moores filed a petition seeking a preliminary injunction enjoining Laneaux from engaging in the same business as Moores in forty-three parishes, monetary damages, and a permanent injunction perpetuating the preliminary injunction sought.
The district court granted the preliminary injunction on February 5, 1998. Laneaux lodged this suspensive appeal alleging the trial court erred in granting the preliminary injunction.

VALIDITY OF NON-COMPETE AGREEMENT
We first address Laneaux's contention that the competition agreement is null and void on its face for failure to comply with La.R.S. 23:921.
La.R.S. 23:921(C) provides in pertinent part:
C. Any person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes ... so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
La.R.S. 23:921(G) provides:
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
*698 Laneaux argues that the agreement is null and void because it fails to define Moores' business. We disagree.
A specific definition of a company's business is not required by La.R.S. 23:921. Henderson Implement Co., Inc. v. Langley, 97-1197 (La.App. 3 Cir. 2/4/98); 707 So.2d 482; See also Barnett v. Jabusch, 607 So.2d 1007 (La.App. 3 Cir.1992), writ denied, 610 So.2d 820 (La.1993) (upholding an oral non-competition agreement). In addition, the record reflects that the parties to the agreement knew full well what Moores' business entails. Moreover, the non-compete agreement lists numerous specific business activities which are covered by the agreement in addition to the general reference to any businesses in which Moores is engaged.
Laneaux next argues that the non-compete agreement is invalid because its prohibition is too broad geographically. We disagree.
The record reflects that Moores has, at least, established a prima facie case that it solicits business in all the parishes listed in the agreement. The fact that they did not in fact have a project in a particular parish during Laneaux's tenure does not require a finding that they were not doing business. Likewise, the fact that they do not have specific projects ongoing in all forty-three parishes requires no such finding. In any event, were we to agree that the agreement was too geographically broad it would not invalidate the entire agreement. As we noted in Henderson, "the statute [La.R.S. 23:921] clearly allows for reformation of a provision of a non-competition agreement not in compliance with the statute." Henderson, 707 So.2d at 486.

ERROR OR DURESS
Laneaux next argues that his consent to the agreement is vitiated because he did not understand or comprehend that he was required to abstain from doing similar business for one year after termination. We disagree.
A cursory reading of the agreement should have alerted Laneaux as to when the prohibition commenced and its duration. Laneaux testified that he read the agreement before signing it. The agreement states clearly and unambiguously at least three times that the prohibition is for one year from termination of employment. Only Laneaux's own carelessness in reading the agreement could have prevented him from knowing the nature and extent of the limitation on competition. In view of this carelessness, Laneaux cannot now avoid the obligations of the contract by claiming error of fact. Hebert v. Livingston Parish Sch. Bd., 438 So.2d 1141 (La.App. 1 Cir. 1983).
Laneaux also suggests that the fact that he was not given the agreement to sign until three weeks after his employment commenced left him in no position to object to provisions of the contract. This court rejected a similar contention in Henderson, 707 So.2d 482. Moreover, as noted by the fourth circuit, an employee is not placed under duress if he will be fired for not signing a non-competition agreement. Litigation Reprographics & Support Servs., Inc. v. Scott, 599 So.2d 922 (La.App. 4 Cir. 1992).

VIOLATION OF AGREEMENT
Laneaux next contends that the trial court erred in finding he violated the non-compete agreement. We disagree.
The evidence is undisputed that Laneaux went to work for Sand Control, a competitor of Moores, a violation of paragraph two of the non-compete agreement. Furthermore, the evidence suggests that Laneaux violated paragraph four of the agreement by attempting to influence an employee of Moores to leave the company. Accordingly, this contention has no merit.
Finally, Laneaux contends that even if he violated the agreement he should not be held to its terms because he terminated his employment for a good reason. Laneaux cites no authority for this proposition, nor do we find any. In any event, Laneaux presents no evidence other than his self-serving testimony that Moores was engaged in unethical business practices that justified his leaving the job. Absent authority and evidence, this contention lacks merit.

*699 CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of appeal are assessed to appellant, Allen Dale Laneaux.
AFFIRMED.