1 ¿THOMAS F. DALEY, Judge.
Plaintiff/appellant, Penny Ledet, has appealed the trial court ruling finding her guilty of one count of criminal constructive contempt of court and one count of criminal direct contempt of court. For the reasons which follow we reverse the finding of the trial court.
FACTS:
The parties were married on December 1, 1987, and had two children, a boy and a girl. Mrs. Ledet filed for divorce on June 21, 2000. In her petition for divorce, she alleged Mr. Ledet exhibited inappropriate sexual behavior with the children and had sexually molested both children. She sought relief under the Post Separation Family Violence Relief Act, R.S. 9:361, et seq. The case was allotted to Division “L” and an Order was issued granting Mrs. Ledet temporary sole custody of the children and restraining Mr. Ledet from going within 500 feet of Mrs. Ledet and the children. 13On August 3, 2000 defendant was granted unsupervised visitation of the children prior to formal hearing on the allegations of abuse. On August 25, 2000, this Court granted Mrs. Ledet’s Supervisory Writs from the visitation order, reversed the order for visitation, and remanded this matter to the trial court to conduct a hearing regarding the alleged abuse within ten days. Ledet v. Ledet, 00-C-1423. After remand the trial judge in Division “L” recused himself from hearing the case.
The case was then re-allotted to Division “K” of the 24th Judicial District Court. A hearing was held on September 5, 2000, before Division “K”, and an Order was issued appointing Tulane University Medical Center’s Department of Psychiatry, as a court appointed expert, to conduct an evaluation of the children and parents. The Order further stated “the parents are to immediately contact Tulane to begin the process.”
On December 8, 2000, Mr. Ledet filed a Rule for Contempt alleging Mrs. Ledet “failed to appear for an evaluation on one date set by the evaluator, and on the second date set by the evaluator failed to appear with her daughter, but rather appeared with only their son.” Pursuant to this rule, a contempt hearing was held on December 19, 2000. At the hearing, Mr. Ledet’s attorney produced a copy of a letter addressed to the trial court from two psychologists at Tulane informing the court that Mrs. Ledet had “refused to allow the children’s participation” in the evaluation. The trial court asked Mrs. Ledet if she had seen a copy of this letter and Mrs. Ledet responded that she had. The trial judge then proceeded to read the letter into the record. The letter states that Mrs. Ledet was interviewed on October 25, 2000, and stated that if the court allowed any form of custody to Mr. Ledet, she would not comply with the Order. The letter further states that the two-hour appointment scheduled for the children on November 20, 2000, was cancelled 40 minutes prior to the appointment Lby Mrs. Ledet. The letter states that the 12 year old daughter refused to attend, and Mrs. Ledet stated that she did not want to force the child to attend against her will. Mrs. Ledet then agreed to reschedule the appointment for November 27, 2000. The letter goes on to state that on November *1070 27, 2000, Mrs. Ledet appeared in the reception area with only her son, and explained that her daughter refused to attend. The letter states that when Mrs. Ledet was informed that the court would be contacted regarding her failure to bring the daughter for the evaluation, Mrs. Le-det became “agitated and argumentative” and picked up her son and left without scheduling any further appointment.
When the trial judge finished reading the letter, Mrs. Ledet’s attorney objected to the use of the letter at the hearing because the evaluator who wrote the letter was not in court. Then Mrs. Ledet’s attorney attempted to explain that Mrs. Le-det had complied with the order. The trial judge in response instructed the attorney to put Mrs. Ledet on the stand. Mrs. Ledet took the stand and the trial judge began questioning Mrs. Ledet and asked her how many times she had been to the evaluator. Mrs. Ledet testified that she took the children to the evaluation with her on two different occasions. Mrs. Le-det testified that on one occasion, after the three of them were questioned by the evaluator, she was told to go into a room with her son so they could be evaluated together. The daughter was taken out of the room. After a half hour, the daughter was brought back into the room. Mrs. Ledet testified that the child’s eyes were swollen and she had been crying. When Mrs. Ledet asked what was wrong, the child stated she did not want to talk about it and would not talk about it to anyone. Mrs. Ledet testified that this experience was very upsetting, and since that time her daughter refused to return for future evaluations. Mrs. Ledet further testified that when she returned with her son, the evaluator asked why the daughter was not | Kpresent. Mrs. Ledet told the evaluator that her daughter refused to attend. Mrs. Ledet then explained that the evaluator stated that her daughter was a problem. As a result of this conversation she became upset and left with her son. Mrs. Ledet admitted that she had not called to reschedule the appointment.
The trial judge then questioned the attorneys as to the status of the OCS investigation. Mr. Ledet’s attorney stated that the investigation was closed. Mrs. Ledet’s attorney stated that an investigation was also being conducted by the sheriffs office. The trial judge called the detective handling the investigation and was told the investigation was ongoing.
At that point in the proceeding, the trial judge ordered visitation. The judge then asked Mrs. Ledet if she understood the hours of the visitation, and Mrs. Ledet responded that she objected to that. Mrs. Ledet then asked the court, “Would it be O.K. if I say something, ma’am?”, to which the trial judge responded “no”. As the trial judge went on to explain the hours of visitation, Mrs. Ledet stated “Will they be supervised by — .” At that point the trial judge told Mrs. Ledet not to speak and “if you say one more word, you’re going to jail.” The trial judge ordered two visits, both to be supervised by Mr. Ledet’s sister. She then told Mrs. Ledet that the children had to be taken to Tulane for the evaluations the week of January 4th. The trial judge then asked Mrs. Ledet several questions about the whereabouts of two guns that Mr. Ledet left in the home. Mrs. Ledet stated that she did not know the whereabouts of the guns. At the conclusion of the gun discussion, Mrs. Ledet stated: “And his sister knows he’s a child molester. She knows that.” The trial judge then informed Mrs. Ledet that she found her in contempt of court and was going to give her jail time. The trial judge then stated:
|fi... I’d like to give you 30 days in jail today; do you understand that? So just *1071 be quiet, because I’m going to sentence you when I’m finished. Because right now if I sentence you, you’re going to spend a lot of time in jail. So it’s probably better if I calm down a little bit before I sentence you; do you understand that? If you say one more word, you’re going to get up to six months.
I’m going to find you in contempt of court. You’re going to spend 48 hours in jail for what you just said; do you understand that?
I’m going to find you in contempt of court for not taking your children to the evaluations. And I’m sentencing you to another 48 hours in jail consecutive to the sentence I just sentenced you to. Do you understand that, ma’am? Good.
The trial judge then told the parties to find someone to pick up the children because Mrs. Ledet was going to jail.
DISCUSSION:
The Louisiana Code of Civil Procedure recognizes two kinds of contempt of court, direct and constructive. Mrs. Ledet was found to be guilty of both constructive and direct contempt of court.
To find a person guilty of constructive contempt, the trial court must find that the person violated an order of the court intentionally, knowingly, and purposefully, without justification. Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5 Cir. 3/11/98), 711 So.2d 308. A contempt proceeding incidental to a civil action is civil in nature, if the purpose of the proceeding is to force compliance with a court order; however, if the primary purpose in imposing the sentence is to punish for the disobedience of a court order, the proceeding is criminal. State in Interest of R.J.S., 493 So.2d 1199 (La.1986). In criminal contempt the burden of proof is beyond a reasonable doubt. Id. The power to impose imprisonment for contempt is given to 17be used by the trial judge judiciously and sparingly. State v. Bullock, 576 So.2d 453 (La.1991).
The trial judge told Mrs. Ledet she was in contempt of court for “not taking [her] children to the evaluations.” Although not specifically stated, since this act was not committed in presence of the court and the offending conduct was violation of a court order, we infer the trial judge found Mrs. Ledet to be in constructive contempt of court. The judgment indicates that the first 48 hour sentence imposed on Mrs. Ledet was for “failing to make the children available for the evaluations.”
Our review of the court order in effect at the time of the contempt hearing required the parents to “immediately contact Tulane to begin the [evaluation] process.” Mrs. Ledet did begin the evaluation process and appeared at least once for a session with both children. There was no order specifically ordering Mrs. Ledet to bring the children repeatedly to Tulane to be evaluated. While bringing the children to follow up evaluations may have been implied it was not specifically ordered. Hence the trial court erred in finding Mrs. Ledet in contempt of court for failing to bring the children to a follow up evaluation without a specific court order requiring same. Accordingly, the judgment of the trial court finding Mrs. Ledet in contempt of court for failing to “make the children available for the evaluations” is reversed.
The trial judge also found Mrs. Le-det in contempt of court “for what you just said.” Although not specifically stated, since this was an act committed in the presence of the court, we conclude that the trial court found Mrs. Ledet in direct contempt of court. Direct contempt is committed in the view and presence of the court and includes “contumacious, insolent, *1072 or disorderly behavior toward the judge ... tending to interrupt or interfere with the business of the court, or impair its dignity | Ror respect for its authority.” C.C.P. art. 222. Code of Civil Procedure article 223 provides:
A person who has committed a direct contempt of court may be found guilty and punished therefor by the court forthwith, without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.
The written order sentencing Mrs. Le-det states:
IT IS ORDERED, ADJUDGED AND DECREED that PENNY CRO-WELL LEDET is found in contempt of Court for failing to make the children available for evaluations and is sentenced to forty-eight (48) hours in the Jefferson Parish Correctional Center.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that PENNY CROWELL LEDET is found in contempt of Court and sentenced to forty-eight (48) hours in the Jefferson Parish Correctional Center. Said sentence is to run consecutive to the above sentence for her conduct in open court.
Since the order does not recite the facts that constitute the finding of direct contempt, we must infer from our reading of the transcript that Mrs. Ledet was found in direct contempt for interfering with the court by speaking after she had been instructed not to speak.
The record reflects that at the time Mrs. Ledet was found in direct contempt, the trial judge had just finished questioning her. The trial judge even asked Mrs. Le-det on two occasions “Do you understand?” Although the trial judge did instruct Mrs. Ledet not to speak earlier in the proceeding, the transcript indicates that the trial judge engaged in an exchange with Mrs. Ledet after the trial judge ordered her not to speak. Asking questions call for a response and negates the prior instruction not to speak. Thus we find that Mrs. Ledet’s conduct of speaking after she was questioned by the judge is not contemptuous. See Bullock, supra.
1^Moreover, the behavior that Mrs. Le-det committed that could be construed as direct contempt was in interrupting the trial judge in commenting regarding Mr. Ledet’s sister’s knowledge of Mr. Ledet’s alleged molestation. This was after Mrs. Ledet had asked the trial judge if she could say something and after she attempted to ask who the children would be supervised by. We find that Mrs. Ledet’s concern over the chosen supervisor was legitimate in light of the fact that Mrs. Ledet sought relief under the Post Separation Family Violence Relief Act, which prohibits a relative of the parent accused of perpetrating family violence from supervising visitation. See R.S. 9:362.
For the above stated reasons, we find Mrs. Ledet’s conduct in front of the trial judge during the December 19, 2000 hearing was not contemptuous. Accordingly, the finding that Mrs. Ledet was in direct contempt is reversed.
The judgment finding Mrs. Ledet in contempt of court “for failing to make the children available for the evaluations” and “for her conduct in open court” is reversed. The two paragraphs of the Judgment dated October 20, 2000, which sentenced Mrs. Ledet to two 48 hour consecutive sentences are vacated.
REVERSED.