960 So.2d 250 (2007)
H2O HAIR, INC.
v.
Lisa MARQUETTE and Corey Sanchez.
Nos. 06-C-930, 07-CA-18.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2007.
*252 Frederic Theodore Le Clercq, Kelly L. Covington, Attorneys at Law, New Orleans, Louisiana, for Plaintiff/Appellee, H2o Hair, Inc.
Philip C. Ciaccio, Jr., Attorney at Law, Gretna, Louisiana, and Philip A. Wittmann, John M. Fezio, Michael Q. Walshe, Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellant, Lisa Marquette.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This decision involves a writ application and an appeal in a suit to enforce a noncompetition agreement. We previously consolidated the writ application with the appeal. In the appeal, defendant Lisa Marquette challenges a judgment that granted a permanent injunction in favor of H2O Hair, Inc., prohibiting Marquette from operating her business, a hair salon. The writ application concerns a post-judgment contempt ruling against Marquette for violation of the injunction. In the appeal, we affirm the judgment, but amend it to provide it is a preliminary rather than a permanent injunction. We grant the writ application in part, reverse in part the judgment on which the writ application is based, and withdraw our stay order previously issued.
On August 4, 2006, H2O Hair, Inc. ("H2O") filed suit against Lisa Marquette, seeking a temporary restraining order and preliminary and permanent injunctions against her for violation of a non-competition agreement, damages for breach of contract, and attorney's fees.[1]
The petition alleged that H2O Hair, Inc. "has operated under the trade names of H2O Salon & Spa, H2O Hair & Moore, Inc., H2O Salon, and H2O Spa." H2O also alleged it currently owns and operates a salon and day spa on Metairie Road in Metairie, Louisiana, and a salon in Mandeville, Louisiana. H2O asserted that the majority of its client base is located in Orleans, Jefferson, and St. Tammany parishes, "where H2O solicits and sells services directly and over the phone to these clients and also performs services to their clients in these areas, whether it be at the salon or on location."
H2O alleged it hired defendant Lisa Marquette as a stylist at the Metairie Road salon in 1994 and that Marquette entered into a Non-Competition Agreement in conjunction with her employment with H2O on October 25, 2000. H2O further alleged that Marquette's employment with H2O concluded on June 30, 2006, on which date "Marquette informed Heather Mahoney and Michael John Gaspard that she was planning to resign from H2O, had been thinking about it for sometime [sic], *253 and felt she needed to open her own business to invest in the future of her family."
According to the petition, Marquette also "admitted that while she was still employed at H2O, she sent out letters to clients of H2O informing them of her change in business and location; she had advised clients that were doing business with her in the H2O salon about her plans; and that she had copies of the names, addresses, and phone numbers of clients at home, which she had used for purposes of informing them of her future plans." Marquette told them her salon is Salon M, located on Canal Street in New Orleans, Louisiana.
In response, Marquette and Sanchez filed Exceptions of No Right and No Cause of Action. They asserted that H2O Hair, Inc. has no right of action against them because it was not a party to the non-competition agreement it seeks to enforce. They also asserted that the petition discloses no cause of action because the agreements "are in violation of La.R.S. 23:921 and therefore null and void," in that the petition asserts that H2O owns and operates a salon and day spa in Metairie and Mandeville; therefore, "[Once plaintiff does not carry on a like business in New Orleans, the provision contained in the non-competition agreement prohibiting exceptors from working in New Orleans is null and void and unenforceable."
A hearing took place on September 7, 2006. On September 28, 2006, the trial court rendered judgment that held the petition was moot as to the requests for temporary restraining order and preliminary injunction, granted the request for permanent injunction of two years as to Lisa Marquette, and denied the requests for damages and attorney's fees.
In written reasons for judgment, the trial court made the following findings:
The majority of H2O's clients come from Orleans, Jefferson, and St. Tammany parishes, and H2O solicits and sells services to clients in those areas.
* * *
On June 30, 2006, Marquette resigned from her employment at H2O, stating that she planned to open her own salon (Salon M). She also admitted that she had sent out letters to clients of H2O informing them of her change of business and location, and that she had used a list compiled by H2O of the names, addresses, and phone numbers of those clients in order to do so. Her new salon is located at 4336 Canal Street in New Orleans.
* * *
Defendants argue that Michael John Gaspard, an owner of H2O, testified that plaintiff does not have an occupational license to operate a salon in Orleans Parish, that plaintiff does not operate a spa or salon in the city, that it does not sell any of its products in the city, and that it does not remit sales taxes to the city. Gaspard did, however, testify that plaintiff obtained an occupational license in New Orleans to sell gift certificates there, and that H2O does perform offsite work in New Orleans pertinent to Mardi Gras balls and weddings. He admitted that this work makes up on 1% of H2O's total business, however. Finally, Gaspard testified that H2O did advertise its services in Orleans Parish via billboards and radio spots, gift certificates, and solicitation of customers over the telephone.
Testimony also was taken from various witnesses for the defense who, in total, made clear that H2O did very little, if any, offsite hairstyling/makeup work in New Orleans. This Court is *254 convinced that this type of work performed in Orleans Parish is minuscule compared to the salon activities performed by plaintiff in Jefferson Parish. What is integral to the success or failure of the non-competition agreements signed by defendants, however, is not this issue, but the issue of whether other activities performed by plaintiff in Orleans Parish are sufficient to satisfy the requirement of 23:921 that it carries on business in that parish similar to that being conducted by defendants there.
* * *
It appears clear from the record that (1) H2O solicits customers in both Jefferson and Orleans Parishes, and therefore conducts business in both parishes; and (2) defendant Marquette used H2O's customer list to solicit that same customer base in both Jefferson and Orleans Parishes. Further, Marquette provides the same services at Salon M to customers that H2O provides to customers at their salon. Taking into consideration the above caselaw, it appears clear that Marquette violated a valid non-competition agreement and that plaintiff is entitled to injunctive relief against her, restraining her from operating her own similar business in either Orleans or Jefferson Parishes, or from soliciting such business (especially via the use of H2O's customer list) in those parishes.
* * *
[S]ince La.R.S. 23:921 in 2000 only allowed non-competition agreements that prevented an employee from leaving and beginning his own similar business in competition with his original employer . . . [t]he Court agrees that therefore Marquette may not be enjoined from working as an employee of a similar competing business.
On October 4, 2006 Marquette filed a motion for suspensive appeal, posted the designated security for the appeal in the amount of $1,000.00, and was granted a suspensive appeal.
On October 9, 2006 H2O filed a motion for dismissal of Marquette's order of appeal as premature because Marquette had filed the motion for appeal without proper notice to H2O, and the time period within which to file a motion for new trial had not expired. H2O incorporated a motion for new trial into the motion for dismissal of the appeal, seeking a new trial of its request for damages and attorney's fees.
On October 12, 2006 H2O filed a notice of deposition for a deposition of Lisa Marquette. On the same date, H2O filed a motion and order for contempt of court and assessment of fines and attorney fees. H2O sought to have Marquette held in contempt of court because she continued to operate Salon M despite the judgment enjoining her from doing so.
On October 20, 2006 Marquette filed a motion to quash the notice of deposition and for protective order, in which she asserted that she had taken a suspensive appeal and that H2O had failed to obtain leave of court to take a post-judgment deposition, as required by La.C.C.P. art. 1433. H2O subsequently applied for and was granted leave to take the deposition.
On November 27, 2006 the trial court rendered judgment granting H2O's motion for contempt, denying H2O's motion for fines and attorney's fees, and denying Marquette's motion to quash deposition and subpoena duces tecum and for protective order.
In written reasons for judgment, the trial court noted that La.C.C.P. art. 3612 provides that although an appeal may be taken as a matter of right from an order or judgment relating to a preliminary or *255 final injunction, such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders. The court stated:
This in itself defeats defendant's argument that any order of appeal suspends the effect of the preliminary injunction and that therefore she may not be held in contempt. Plaintiff furthermore cites a Supreme Court case . . ., which states that in cases where the trial court has declined to grant a stay in a preliminary injunction matter, the appeal is in the nature of a devolutive appeal. In this matter, the Court is declining such a stay.
If, however, the injunction which was granted is characterized as a permanent (or "final") injunction, as this Court believes (due to the fact that such an injunction was requested by plaintiff, the minute entries reflect setting both preliminary and permanent injunctions for hearing, and despite defendant's Fourth Circuit case to the contrary), the court retains jurisdiction over this matter and the ability to enforce its judgment until the plaintiff's Motion for New Trial is heard. . . . After the hearing, defendant may appeal; however, Art. 3612 still applies as to the suspension of the judgment.
On December 1, 2006 Marquette filed a Notice of Intent to Apply for Supervisory Writ and Request for Stay regarding the judgment of November 27, 2006.
On December 5, 2006, the trial court signed an order directing that Marquette "immediately cease operations of Salon M in New Orleans, Louisiana and that she must pay $500.00 for every day Salon M remains open after the date of this Order." That order stated further,
[T]his Honorable Court did not consider nor intend to suspend its Judgment granting an injunction on September 28, 2006; that the above captioned matter shall not be stayed pending any appeal; that this Court signed defendant's Motion and Order for Appeal of October 4, 2006, in error; and that this Court orders that any appeal of its Judgment of September 28, 2006, shall be devolutive.
On December 6, 2006 Marquette's writ application was lodged in this Court.
On December 20, 2006, the trial court rendered judgment granting H2O's motion for new trial as to damages and attorney's fees only, but denying H2O's motion to dismiss the appeal. In written reasons for judgment, the court stated it had declined to stay its judgment of September 28, 2006, and that Marquette's styling of her motion for appeal as suspensive did not suspend the effects of the September 28, 2006 judgment because it was never the court's intention to suspend the effect of the judgment. The court ordered Marquette to observe the injunction against her and directed that her appeal proceed as a devolutive appeal. Regarding H2O's motion for new trial, the court stated the only issues to be raised are those involving damages to H2O due to Marquette's acts and whether or not Marquette should pay H2O's attorney's fees. In conclusion, the court said:
Finally, the Court agrees with defendant that a trial on whether or not a permanent injunction against her is warranted has yet to be heard. This is despite the exhaustive testimony taken during the trial of the preliminary injunction, since neither party stipulated that the trial should be applicable to a permanent injunction as well. . . . Therefore, the parties have the right to set a trial date as to a permanent injunction against her. [Emphasis added.]
*256 On December 21, 2006, this Court granted a stay of the contempt order pending determination of the writ application, and referred the writ application to the panel that would handle the merits of the appeal from the injunction dated September 28, 2006. Because determination of this appeal also involves ruling on the merits of the writ application, we consolidated them. Although the writ application came before this Court first, we decide the appeal first, because it concerns the earlier judgment.
APPEAL
On appeal, Marquette asserts (1) the district court erred in stating that its ruling pertained to H2O's request for a permanent injunction, and Louisiana law provides that this appeal should be considered as an appeal of a preliminary injunction; (2) the district court erred in determining that H2O carries on a "like business" in Orleans Parish as required by La.R.S. 23:921(C) for enforcement of a non-competition agreement. Marquette asserts the judgment must be reversed.
First, with respect to whether the September 28, 2006 judgment was properly called a permanent injunction, Marquette is correct. The trial court erred in designating it as a permanent injunction, as the trial judge himself recognized in his judgment of December 20, 2006, which denied H2O's motion to dismiss the appeal. Hence, this appeal will treat the judgment as a judgment granting a preliminary injunction only. The judgment of September 28, 2006 is amended to reflect that it concerns a preliminary injunction rather than a permanent injunction.
The second assignment of error, regarding whether the court erred in finding that H2O conducts business in Orleans Parish, is the crux of this appeal.
The applicable statute is La.R.S. 23:921, as follows in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
* * *
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
* * *
H. Any agreement covered by Subsections B, C, E, F, or G of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent *257 jurisdiction shall order injunctive relief enforcing the terms of the agreement.
The Non-Competition Agreement states it is between H2O Hair & Moore, Inc. and Lisa Marquette.[2] The agreement provides as follows, in pertinent part:
2. Non-competition/Non-Solicitation. Employee agrees and covenants that, during the period of Employee's employment with Company and for a period of two (2) years following employee's termination of employment with Company (regardless of the reason for termination):
A. Employee will not divert, solicit, or pirate any customer of Company for whom services were performed, directly or under the supervision of some other Employee of Company, during the last two years of Employee's employment with Company.
B. Employee will not divert, solicit, or pirate on Employee's behalf, or on the behalf of any other Company, person or entity, any Employee of Company, or directly or indirectly cause any such Employee of Company to leave Company's employment.
C. Employee will not, either directly or indirectly, on Employee's behalf or for the behalf of others, render or be retained to render similar services to those which the Company engages whether as an officer, partner, trustee, consultant, independent contractor, sole proprietor for Employee, for any business engaged in the same business as Company, including any customer of Company for whom Employee has provided services during the last two years of Employee's employment with Company. The Company's business is to provide complete hair, body, and cosmetic services as well as the products for those services and includes, but is not limited to, cuts, styling, permanents, coloring, facials, massages, makeovers, and other related hair, body, and cosmetic services as well as products related to those services.
The agreement states that the geographic area to which the agreement applies is the Parish of Orleans and the Parish of Jefferson in the State of Louisiana. In addition, there is a clause requiring the employee to maintain confidentiality of the employer's confidential information, including customer lists. Finally, the parties agreed that the employer is entitled to injunctive relief to prevent or curtail any breach of the agreement by the employee.
On appeal, Marquette asserts the district court erred in relying on the precedent of Alexander & Alexander, Inc. v. Simpson, 370 So.2d 670, 671 (La.App. 4 Cir.1979), in which the fourth circuit held there is no distinction between non-competition and non-solicitation agreements, and that the statute applies not only to the "operation of a similar business, but also all components of the business operation, such as solicitation of customers. Solicitation of business is certainly a part of competition." Marquette points out that the *258 interpretation in Alexander relied on specific language in a prior version of the statute that is no longer found in the version of the statute applicable here. Further, Marquette argues, if mere solicitation of business in a parish equals carrying on business in a parish, such an interpretation would run afoul of the jurisprudence mandating that the statute be strictly construed and the strong public policy disfavoring non-competition agreements.
In addition, Marquette distinguishes the case of Moores Pump and Supply v. Laneaux, 98-1049 (La.App. 3 Cir. 2/3/99), 727 So.2d 695, 696-697, also cited by the trial court. In contrast to the facts in Moores, Marquette asserts, the nature of H2O's business does not require its employees to go to a specific site and render services to customers at that site. Rather, H2O's customers come to H2O in Metairie or Mandeville, and all services are rendered in-house at those locations. Thus, Marquette argues, the business involved in Moores is not analogous to the business in which H2O is engaged.
Marquette also points out that there was no documentary support for the testimony of Michael John Gaspard (one of the owners of H2O) that one percent of H2O's business comes from offsite work performed in New Orleans for Mardi Gras balls, weddings, and charitable functions. Gaspard could not name any specific Carnival organization for which H2O had performed such work and had no documentation to support his testimony. Further, neither of the other owners of H2O (Holli Gaspard and Heather Mahoney), nor any of the current employees of H2O, testified in support of Gaspard's testimony.
Several witnesses who testified for Marquette contradicted Gaspard's testimony regarding off-site work. The gist of their testimony was that H2O declined client requests for off-site work, but that individual stylists employed by H2O occasionally did off-site work on their own time, and any payment received for such work belonged exclusively to the employee and was not shared with H2O.
Marquette's witnesses did not, however, contradict Gaspard's testimony that a substantial part of H2O's customer base is from Orleans Parish.
The real issue on appeal is not whether H2O performed off-site work in Orleans Parish, but rather whether H2O's advertisement and solicitation of customers in Orleans Parish constituted "carrying on a like business" in that parish for purposes of the non-competition/non-solicitation agreement.
Louisiana has long had a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 298. Louisiana's strong public policy restricting non-competition agreements is based on an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden.[3]Id.
*259 Because such agreements are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. SWAT 24, 808 So.2d at 298. La.R.S. 23:921(C) is an exception to Louisiana public policy against non-compete agreements and as such, must be strictly construed. See Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 00-1954 (La.App. 1 Cir. 9/28/01), 809 So.2d 405, 411, writs denied, 01-3316 (La.3/8/02), 811 So.2d 883, and 01-3355 (La.3/8/02), 811 So.2d 886.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Jurisich v. Jenkins, 97-1870 (La.App. 1 Cir. 9/25/98), 722 So.2d 1008, 1011, reversed on other grounds, 99-0076 (La.10/19/99), 749 So.2d 597. However, in the event an employee enters into an agreement with his employer not to compete, pursuant to La.R.S. 23:921, and fails to perform his obligation under such an agreement, the court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of the employee's breach of the non-compete agreement. See Clear Channel Broadcasting, Inc. v. Brown, 04-0133 (La.App. 4 Cir. 3/30/05), 901 So.2d 553, 557; see also La. R.S. 23:921(H), formerly La.R.S. 23:921(G).
In determining whether the employer has met his burden of proof, the courts have been called on to consider the validity and enforceability of the agreement sought to be enforced by the employer. See SWAT 24, 808 So.2d at 294; Clear Channel, 901 So.2d at 558; Kimball, 809 So.2d at 405. Even though La.R.S. 23:921 mandates the court to issue injunctive relief upon proof of the obligor's failure to perform, without the necessity of proving irreparable injury, the employer must still establish that it is entitled to relief. See Clear Channel, 901 So.2d at 558.
Where the actions sought to be enjoined pursuant to a non-compete agreement do not fall within the exception found in LSA-R.S. 23:921(C) or where the non-compete agreement is found to be unenforceable for failure to conform to LSA-R.S. 23:921, the employer is unable to establish that it is entitled to the relief sought. See SWAT 24, 808 So.2d at 307; Clear Channel, 901 So.2d at 556-58; Kimball, 809 So.2d at 411-12.
Typically, a trial court enjoys considerable discretion in determining whether a preliminary injunction is warranted. See State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry, 95-0391 (La.App. 1 Cir. 11/9/95), 664 So.2d 1216, 1220. The trial court's issuance of a preliminary injunction will not be disturbed on appeal absent a clear abuse of discretion. Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 04-1884 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1163, writ denied, 05-2326 (La.3/17/06), 925 So.2d 541.
"[T]he statute contemplates that the parishes specified in the agreement must be parishes where the ex-employer actually has a location or customers. Employers are not permitted to lock former employees out of markets in which the employer does not operate." Vartech Systems, Inc. v. Hayden, 2005-2499 (La.App. 1 Cir. 12/20/06), 951 So.2d 247, 258, citing Cellular One, Inc. v. Boyd, 94-1783 (La.App. 1 Cir. 3/3/95), 653 So.2d 30, 33, writ denied, 95-1367 (La.9/15/95), 660 So.2d 449.
We conclude the trial court did not err in finding that H2O does business in Orleans Parish for purposes of the non-competition *260 agreement. It was uncontradicted that a substantial portion of H2O's customers are residents of Orleans Parish, and that H2O solicitation of customers in Orleans Parish via advertising and other means is integral to its business. Therefore, even construing the agreement narrowly, we find that the judgment of September 28, 2006 was correct insofar as it issued an injunction as to Lisa Marquette. However, we amend the judgment to provide it is a preliminary rather than a permanent injunction.
WRIT APPLICATION
As noted above, the writ application ensued following a judgment that found Marquette in contempt for continuing to operate Salon M after issuance of the September 28, 2006 judgment. On November 27, 2006 the trial court ruled on H2O's motion for contempt, assessment of fines and attorney's fees against Marquette. The trial court found Marquette in contempt for her failure to cease conducting her business as ordered by the September 28, 2006 judgment. The judgment did not address the fact that Marquette had been granted a devolutive appeal from the September 28, 2006 judgment. The judgment simply granted H2O's motion for contempt, while denying H2O's motion for fines and attorney's fees.
To find a person guilty of constructive contempt, the trial court must find that the person violated an order of the court intentionally, knowingly, and purposefully, without justification. A contempt proceeding incidental to a civil action is civil in nature, if the purpose of the proceeding is to force compliance with a court order; however, if the primary purpose in imposing the sentence is to punish for the disobedience of a court order, the proceeding is criminal. In criminal contempt the burden of proof is beyond a reasonable doubt. [Citations omitted.]
Ledet v. Ledet, 01-519 (La.App. 5 Cir. 10/30/01), 800 So.2d 1068, 1071.
In the application for writs, Marquette argued the trial court erred in finding she was in contempt of court, because the order granting the suspensive appeal suspended the effect of the judgment and, therefore, she was not in contempt by continuing to operate her business. Thus, she asserts she did not "intentionally, knowingly and purposefully violate the September 28, 2006 judgment of the court."
We agree with Marquette's position. The trial court granted the appeal as suspensive on October 4, 2006, and the trial court did not formally withdraw that designation until December 20, 2006. Thus, the effect of the September 28, 2006 judgment was suspended between October 4 and December 20, 2006. Hence, Marquette was justified in continuing to operate her business during that period, and the trial court erred in finding her in contempt on November 27, 2006.
Accordingly, the judgment of November 27, 2006 is vacated insofar as it granted H2O's Motion for Contempt against Lisa Marquette.
For the foregoing reasons, the judgment of September 28, 2006 is affirmed, but amended to provide it is a preliminary rather than a permanent injunction. The judgment of November 27, 2006 is vacated insofar as it granted H2O's motion for contempt against Lisa Marquette. The stay issued in connection with Writ Application No. 06-C-930 is withdrawn.
JUDGMENT OF SEPTEMBER 28, 2006 AFFIRMED IN PART AND AMENDED; WRIT APPLICATION GRANTED IN PART AND JUDGMENT *261 OF NOVEMBER 27, 2006 AMENDED; STAY ORDER LIFTED
EDWARDS, J., dissents in part.
EDWARDS, J. dissenting in part.
I dissent from that portion of the majority opinion that finds that H2O made a prima facie case that a preliminary injunction was warranted, specifically, that H2O does business in New Orleans within the meaning of LSA-R.S. 23:921. I agree that the real issue on appeal is whether H2O's advertisement and solicitation of customers in Orleans Parish constitutes "carrying on a like business" for purposes of the agreement. The testimony at trial showed that H20's activities, specially directed at clients in New Orleans at the time of the alleged contract violation, consisted of two billboards placed physically within the city limits. Further, although Mr. Gaspard testified that a substantial part of its customer base is from New Orleans, he produced no records to validate his self-serving testimony. Therefore, H2O failed to prove that a substantial part of its customer base derived from Orleans Parish. In my opinion, there was insufficient evidence to prove that the salon carried on a like business in Orleans Parish and, thus, that Marquette failed in her obligations under the non-compete agreement. Because H20 did not prove Marquette's failure to perform, it was not entitled to injunctive relief under LS-R.S. 23:921(H).
I respectfully dissent.
NOTES
[1] Another former H2O employee, Corey Sanchez, who joined Marquette at Salon M as her employee, was also a defendant in this suit, but the case against him is not part of this appeal.
[2] Marquette's Exception of No Right of Action relied on the fact that the maker of the agreement was named as "H2O Hair and Moore, Inc.," which the Marquette asserted showed that the plaintiff in this suit, H2O Hair, Inc., was not party to the agreement. The trial judge referred the exception to the trial on the merits. After hearing evidence from one of the principals of H2O that "H2O Hair and Moore, Inc." was a trade name sometimes used by H2O Hair, Inc. in its earlier years, the trial court denied the exception of no right of action. Marquette has not appealed that ruling.
[3] "[T]he Civil Code limits individuals' rights in other areas where a derogation of such rights would result in the individual becoming a public burden. An individual is forbidden from divesting himself of all his property by a donation inter vivos. LSA-C.C. art. 1497. Also, the right to contract not to compete is limited. LSA-R.S. 23:921. `Both of these situations demonstrate the underlying state concern that a person cannot by convention deprive himself of the ability to support himself.' Note, Louisiana's Forbidden Antenuptial Waiver of Alimony Pendente Lite, 39 La. L.Rev. 1161, 1168 (1979)." McAlpine v. McAlpine, 94-1594, p. 11 (La.9/5/96), 679 So.2d 85, 91.