MARION F. EDWARDS, Judge.
 

 laThis is an appeal by plaintiff/appellant, USI Insurance Services, LLC (“USI”), of a trial court judgment that denied a Motion for Preliminary Injunction, dissolved a Temporary Restraining Order, and rescinded the bond posted by USI in an action against former employee Burnett J. Tappel, III (“Mr. Tappel”), relating to an employment contract.
 

 Mr. Tappel specialized in the marine and energy insurance area and sold and serviced insurance coverage for onshore and offshore property, protection and indemnity hull and maritime employer’s liability and workers’ compensation. He was hired by USI as an account producer in March of 2004. At that time, the parties signed an Asset Purchase Agreement for Mr. Tappel’s book of business and an Employment Agreement. Mr. Tappel was employed with USI from that time until his resignation in November of 2008. After his departure from the employ of USI, Mr. Tappel began employment with First Insurance Agency, Inc. (“First Insurance”).
 

 Shortly after Mr. Tappel resigned, USI filed for and obtained a temporary restraining order preventing Mr. Tappel from conducting the business of insurance Lin any form, from circumventing the relationship between USI and its clients, and from using or disclosing any USI confidential material. In due course, the trial court conducted a hearing on USI’s request for a preliminary injunction in the form and substance of temporary restraining order issued by the trial court.
 

 In the petition for the injunction, USI alleged that Superior Diving Company, Inc. (“Superior”) was one of the accounts purchased in the Asset Purchase Agreement. It is further alleged that, after Superior went out of business, its owner, Louis Schaeffer, began Legacy Offshore, Inc. (“Legacy”) and purchased insurance with USI, making Legacy one of USI’s existing clients pursuant to the terms of the Employment Agreement. USI asserts that Mr. Tappel violated the terms of both agreements when he solicited and diverted Legacy’s insurance coverage from USI to First Insurance in November of 2008.
 

 USI also makes the claim that Mr. Tap-pel violated the confidentiality section of the Employment Agreement by sending a USI proposal format and a USI marine and energy power point presentation from his office at USI to his home computer prior to his resignation.
 

 FACTS
 

 The undisputed facts are that, at the beginning of their association, the parties entered into two contracts. The first was an Asset Purchase Agreement by which USI agreed to purchase from Mr. Tappel all of his “right, title and interest in and to Seller’s Client Accounts as listed in Exhibit A, and any Know-how related to such Accounts.... ” Payment was formulated by a percentage of commissions USI would receive on the client accounts and also included a down payment of $200,000. Ultimately, USI paid Mr. Tappel about 1.6 million dollars for the business. The agreement was a four-year agreement effective on March 15, 2004. |4As part of that agreement, the parties signed a re
 
 *422
 
 strictive covenant agreement in which Mr. Tappel agreed that he would not
 

 directly or indirectly, solicit, sell, service, manage, provide, or accept any request to provide, or induce the termination, cancellation or non-renewal of, any clients listed in the attached Exhibit A. Such restrictive covenant agreement shall exist for a term of five (5) years from the Effective date of this Agreement.
 

 The second contract confected by the parties was the Employment Agreement at issue herein. It was a four-year contract “commencing on March 15, 2004 and ending on March 14, 2008.... ” The agreement further provided that:
 

 At the end of the Term, Producer shall continue to be employed automatically for successive one year terms unless USI provides Producer in writing at least thirty (80) days before the end of any term notice of USI’s intent to terminate this Agreement at the end of the then current Term. Such notice of termination shall not end the obligations of Parties which continue beyond the termination of the Agreement.
 

 Mr. Tappel gave USI a thirty-day notice of resignation by way of a letter dated October 6, 2008. He resigned from the employ of USI on November 7, 2008. In the resignation letter, Mr. Tappel indicates there was some disagreement between the parties regarding the commissions still due under the Employment Agreement. Mr. Tappel also expressed his intent to begin employment with First Insurance soon after the effective date of his resignation from USI.
 

 At the hearing on the petition for injunction, USI presented the testimony of Bethany Loving (“Ms. Loving”), the senior vice president of operations for the Southwest region of USI. She works out of the Houston office and was never present at any conversation between Mr. Tappel and any of his clients. Further, Ms. Loving had no knowledge of Mr. Tappel’s personal work habits.
 

 IsUSI introduced several e-mails showing that Mr. Tappel sent client information from his office to his home computer while he was employed with USI.
 

 Mr. Tappel also testified at the hearing. He denied any violation of the non-compete or non-solicitation clause of the Employment Agreement. He explained that he often worked from home and needed the account information he e-mailed from the office to his home. He also stated that, even after he resigned from USI, he was working with representatives of the company on a co-brokerage agreement to renew the insurance on Legacy. When the parties could not come to terms on the co-brokerage agreement, USI filed this action. Mr. Tappel denied any breach of either agreement with USI.
 

 After the hearing, the trial court found that clause 7.3 of the Employment Agreement
 
 [1]
 
 entitled, “Non Competition,” termi
 
 *423
 
 nated on August 31, 2008 and was not effective on the date of Mr. Tappet’s resignation. The court further found that the accounts held by USI were not parties to the employment contract and were not bound by the contract. Therefore, the clients were free to change insurance agents at will.
 

 Additionally, the court found there was a legitimate, work-related reason for Mr. Tappel to e-mail documents from work to his home while he was employed |fiwith USI. For these reasons, the trial court rendered a judgment denying USI’s request for a preliminary injunction, dissolving the temporary restraining order, and rescinding the security bond. It is from that judgment that USI appeals.
 

 In brief to this court, USI concedes that the non-competing business clause expired on August 31, 2008. Further, USI acknowledges that, under the terms of clause 7.3 of the Employment Agreement, Mr. Tappel could have started a business thát provided the same products and services as USI. However, USI argues that this clause is not applicable since Mr. Tappel did not form a competing business. USI asserts that clause 7.1, the non-solicitation clause, and Section 6, the confidential information and property section of the Employment Agreement, apply.
 

 Specifically, USI argues that the purpose of clause 7.1 was to prohibit Mr. Tappel from soliciting or circumventing the business of USI for two years after he left the company. USI asserts that Mr. Tappel violated this clause when he began servicing Legacy, an existing client of USI, within weeks after his termination from USI.
 

 Mr. Tappel counters that the restrictions on his employment upon his termination from USI in November of 2008 had clearly expired, and he denies any violation of the non-solicitation clause. Further, while he concedes e-mailing information about his clients to his home computer, Mr. Tappel argues that this was done while he was still employed by USI to enable him to work at home. He also states that this information was never released to a third party. Thus, he argues there was no violation of the confidentiality clause.
 

 ULAW
 

 Louisiana has a strong public policy disfavoring non-competition agreements between employers and employees.
 
 [2]
 
 This policy is based on the state’s desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden.
 
 [3]
 
 Such agreements are in derogation of the common right, and must be
 
 *424
 
 strictly construed against the party seeking their enforcement.
 

 La. R.S. 28:921 provides limited instances in which a contract can restrict the exercise of a lawful profession. That statute must also be strictly construed, since it is an exception to Louisiana public policy against such contracts.
 
 [4]
 
 Louisiana courts have made no distinction between non-compete and non-solicitation clauses when interpreting R.S. 23:921.
 
 [5]
 

 In general, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue.
 
 [6]
 
 To do so, he must present a
 
 prima facie
 
 showing that he will prevail on the merits, and thus, is entitled to the relief sought.
 
 [7]
 
 In cases involving non-compete agreements, however, the showing of irreparable injury is not required if the employer proves the employee breached the agreement.
 
 [8]
 

 Thus, the issues presented for our review require the interpretation of clause 7.1 and the confidentiality clause, both of which must be strictly construed against USI as the author of the agreement and the party seeking its enforcement. Our first | ^consideration in determining whether USI has met its burden of proof that Mr. Tappel breached the non-compete or non-solicitation agreement, is whether clauses in the Employment Agreement used as a basis are valid and enforceable.
 
 [9]
 
 In the event that the actions sought to be enjoined pursuant to a non-compete agreement do not fall within the exception found La. R.S. 23:921 or where the non-compete agreement is unenforceable for failure to conform to the statute, the employer cannot establish that it is entitled to the relief sought.
 
 [10]
 

 NON-COMPETEI NON-SOLICITATION
 

 We first note that the non-compete/non-solicitation clause in the Asset Purchase Agreement that restricts Mr. Tappel for five years after the date of the sale is clearly in violation of La. R.S. 28:921.
 
 [11]
 
 That statute limits the length of the allowable restrictive period to two years. Thus, that agreement is unenforceable. We also find that clause 7.3 of the Employment Agreement expired on August 31, 2008 and is not applicable.
 
 [12]
 

 
 *425
 
 We are not convinced by USI’s argument that clause 7.1 of the Employment Agreement prohibited Mr. Tappel from soliciting, circumventing the business of USI, or from servicing USI accounts for two years after he left the company.
 

 The clause at issue reads as follows:
 

 |97.1
 
 Non-SolicitationlNon-Circumvention.
 
 Except in the normal course of business on behalf of the Company or any Serviced USI Company, Producer agrees that he will not, directly or indirectly, (a) solicit, sell, service, manage, provide, or accept any request to provide, or induce the termination, cancellation or non-renewal of, any USI Business from or by (i) any person, corporation, firm or other entity, whose account constituted a Client Account of the company or such Serviced USI Company, at any time within 24 months
 
 preceding
 
 the earlier of the date of such act or the date of termination of Producer’s employment with the Company or (ii) who or which was an Active Prospective Client of the Company or such Serviced USI Company, as of the
 
 earlier of the date of such act or the effective date of termination
 
 of Producer’s employment with the Company or (b) at anytime attempt to circumvent directly or indirectly, on his own behalf or on the behalf of any other Person, the relationship existing between the Company and any Active Prospective Client, Client Account or Serviced USI Company, The restriction contained in this Section 7.1 shall apply throughout the Term hereof and thereafter until
 
 two (2) years after the effective date on which Producer’s employment with the Company, or its successor in interest, terminates.
 
 Such non-solicitation agreement encompasses the area of the parishes where Producers’ clients are located as listed in the attached Exhibit B.
 

 (Emphasis added.) We find clause 7.1 to be too ambiguous to support USI’s burden of proof. This clause is contradictory as well as ambiguous. It appears to combine elements of a non-compete clause in the first part with non-solicitation prohibitions in the remainder of the clause. Further, we find the length of the prohibition ambiguous. The first part of the clause appears to limit the prohibition to two years
 
 prior
 
 to the termination, while the end of the clause limits the prohibition to two years
 
 after
 
 termination. Further, the term “such act” is undefined. In all, we find the above clause to be ambiguous and over broad. When strictly construed against the author, USI, and considered in accordance with the dictate that such clauses are in contravention of public policy in Louisiana, we find this clause to be invalid and unenforceable.
 

 110With no valid enforceable agreement to support a
 
 prima facie
 
 showing that USI could prevail on the merits, we find USI has not met the necessary burden for issuance of a preliminary injunction based on the non-compete/non-solicitation clauses.
 

 CONFIDENTIALITY
 

 The Employment Agreement contains a section entitled “Confidential Information and Property.” This section of the agreement contains three clauses which declare and define certain confidential information as property of the company and prohibit the disclosure of that information to third persons. However, there was no allegation or evidence that Mr. Tappel dis
 
 *426
 
 closed any information to a third party. All e-mails introduced regarding this claim were e-mails sent from Mr. Tappel to himself at home. All of the e-mails were sent while Mr. Tappel was employed with USI and regarded USI’s business. There is nothing to refute Mr. Tappel’s testimony that the e-mails were necessary for him to do his job at USI. We find no merit in this argument.
 

 Accordingly, we find the ruling of the trial court correct, and we affirm the judgment.
 

 AFFIRMED.
 

 [1]
 

 . 7.3
 
 Non Competition.
 
 Producer further agrees that he will refrain from carrying on a business which provides any Seller Business, directly or indirectly, except in the normal course of business on behalf of the company or any Serviced USI Company, in any of the parishes within the State of Louisiana, listed on Exhibit B of the Employment Agreement and/or Section 9.1 of the Disclosure Schedule, as modified in writing from time to time by the Company so as to reflect in good faith the deletion of those parishes and states in which the Company commences, the provision of substantial Seller Business. The term "carrying on a business" shall mean to engage in any such business as a sole proprietor, partner, member of a limited liability company, manager, corporate officer, director, employee of stockholder. It is expressly agreed that at the foregoing is not intended to restrict or prohibit the ownership by Producer of stock or other securities of a publicly-held corpora
 
 *423
 
 tion in which Produce does not (i) possess beneficial ownership of more that
 
 5%
 
 of the voting stock of such corporation or (ii) participate in any management or advisory capacity. The restrictions contained in this Section 7(3) shall apply throughout the Term hereof and thereafter continuing until the earlier of (i) two years following the effective date on which Producer’s employment with the Company or its successor in interest terminates, or (ii) August 31, 2008;
 
 provided, however,
 
 that if Producer's employment is terminated pursuant to the provisions of Section 8(1) or 8(3) hereof, then such restrictions shall continue throughout the severance period required thereunder, unless Producer elects to forego all severance payments required thereunder, in which case such restrictions shall terminate at the end of the Term. (Emphasis in original.)
 

 [2]
 

 .
 
 SWAT 24 Shreveport Bossier, Inc. v. Bond,
 
 00-1695 (La.6/29/01), 808 So.2d 294, 298;
 
 Bell v. Rimkus Consulting Group, Inc. of La.,
 
 08-491 (La.App. 5 Cir. 1/13/09), 8 So.3d 64,
 
 writs denied,
 
 09-0329 (La.4/24/09), 7 So.3d 1198.
 

 [3]
 

 .
 
 Id.
 

 [4]
 

 .
 
 H2O Hair, Inc. v. Marquette,
 
 06-930 (La. App. 5 Cir. 5/15/07), 960 So.2d 250;
 
 Bell v. Rimkus Consulting Group, Inc. of La., supra.
 

 [5]
 

 . Millet v. Crump,
 
 96-639 (La.App. 5 Cir. 12/30/96), 687 So.2d 132, 135,
 
 writs denied,
 
 97-3207 (La.2/20/98), 709 So.2d 782.
 

 [6]
 

 .
 
 Bell v. Rimkus Consulting Group, Inc. of La., supra.
 

 [7]
 

 .
 
 Id.
 

 [8]
 

 .
 
 H2O Hair, Inc.,
 
 960 So.2d at 259.
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 . La. R.S. 23:921, in pertinent part, provides:
 

 A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
 

 B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.
 

 [12]
 

 . 7.3 Non Competition
 

 The restrictions contained in this Section 7(3) shall apply throughout the Term hereof and thereafter continuing until the earlier of (i) two years following the effective date
 
 *425
 

 on
 
 which Producer's employment with the Company or its successor in interest terminates, or (ii) August 31, 2008....