L KIRBY, Judge.
This is an appeal from a final judgment rendered on June 2, 1999, by the Civil District Court for the Parish of Orleans, finding Mr. Clarence 0. Dupuy, Jr. in contempt of court. Mr. Dupuy was one of the attorneys for the Defendants, Harry and Bertha Hillensbeck. The issues in this appeal are identical to those in the Hillens-becks’ writ application captioned “In Re: Harry J. Hillensbeck and Bertha Hillens-beck, 99-C-1938.”

STATEMENT OF THE FACTS

The facts pertaining to the underlying dispute between the parties are not relevant to a resolution of the issues in this appeal. Insofar as relevant, the facts are as follows:
On August 12, 1998 Lucky Coin Machines Company, Inc. (hereinafter “Lucky”) filed a Petition For Damages For Breach of Contract against the Hillens-becks. The dispute involved whether Lucky had the right to place video | ¡>poker machines in the Hillensbecks’ business establishment, The Hummingbird Hotel and Grill. The Hillensbecks were represented by Appellant Dupuy.
On August 14, 1998 Lucky filed a Supplemental and Amending Petition requesting an order restraining and enjoining the Hillensbecks from asking the State Police to disable Lucky’s machines in the Hummingbird. Lucky also asked that the Defendants be restrained and enjoined from allowing any of its competitors to place machines in the Defendants’ business. That same day the Court below ordered the issuance of a temporary restraining order continuing every ten days to the date of the hearing for a writ of preliminary injunction:
restraining and enjoining defendants from requesting the Video Gaming Division of the Louisiana State Police disable the video gaming devices of Lucky Coin and further restraining and enjoining defendants from placing video gaming devices from any other business in place of Lucky Coin’s video gaming devices ....
A bond of five hundred ($500.00) dollars was fixed and a hearing was set for August 24,1998.
After the hearing on August 24,1998 the court below rendered judgment on September 1,1998 as follows:
IT IS ORDERED, AD JUDGED AND DECREED that the Preliminary Injunction and the Temporary Restraining Order are hereby granted, bond to be set at $10,000.00. (Ten Thousand and 00/100 Dollars). A hearing on the Preliminary Injunction is set for September 11,1998....
Following the September 11th hearing the court rendered judgment on September 23,1998 as follows:
13enjoining the defendants from interfering with the plaintiff placing machines back in defendants’ establishment and from interfering with the State Police re-connecting the machines.
This judgment was not served upon Mr. Dupuy until the following day.
Thereafter, on March 2, 1999 Lucky filed a pleading captioned “Plaintiffs Second Motion For Contempt, Damages and To Show Cause.” Paragraph V of that motion makes the only factual allegations against Mr. Dupuy. Lucky claimed that on September 21, 1998 Attorney Dupuy contacted an Assistant Attorney General requesting and directing the State Police to enable a competitor’s machines at the Hummingbird. Following a hearing held on April 30, 1999, on June 2, 1999 the Court below adjudged Mr. Dupuy in contempt, finding that he was “in clear violation of two injunctions issued by the Court.”[1] (Emphasis added.) It then ordered the Hillensbecks to account to *1264 Lucky for all funds collected from the competitor’s video poker machines after September 1, 1998 and it fined both Mr. and Mrs. Hillensbeck as well as their attorney, Dupuy, “jointly, severally and in solido in an amount equal to all funds collected from the video gaming devices located in the Hillensbecks’ business location since September 1,1998 ...”

ASSIGNMENTS OF ERROR

Mr. Dupuy assigns three errors:
|41. The District Court erred by failing to describe in reasonable detail the act or acts sought to be restrained in the September 1,1998 judgment.
2. The District Court erred by finding him in contempt of the September 23, 1998 judgment because it was not effective against him because he did not receive actual notice of the judgment until September 24, 1998, after the date of the alleged event of contempt occurred.
3. The District Court erred by imposing a fine on him, as an attorney, greater than the statutory maximum of one thousand ($1,000.00) dollars and making that fine joint, several and in solido. DISCUSSION

ASSIGNMENT 1:

LSA — C.C.P. art. 3605 provides as follows:
Art. 3605. Content and scope of injunction or restraining order
An order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. The order shall be effective against the parties restrained, their officers, agents, employees, and counsel, and those persons in active concert or participation with them, from the time they receive actual knowledge of the order by personal service or otherwise.
The District Court’s judgment of September 1, 1998 is quoted above. It is devoid of any description of any conduct sought to be restrained. It thus does not comply with LSA — C.C.P art. 3605, supra, and, as such, it is fatally defective. See Vanvrancken v. Roy, 296 So.2d 460 (La. App. 4th Cir.1974)[2] and Ormond Country Club v. Dorvin Developments, Inc., et al., 498 So.2d 144 (La.App. 5th Cir.1986)[3]. Since the judgment of September 1, 1998 is fatally defective and, as such, null and void, Mr. Dupuy could not have been in contempt of it when he spoke with the Assistant Attorney General on September 21, 1998.

*1265
ASSIGNMENT 2:

In his second assignment Mr. Du-puy complains that he could not have been in contempt of the September 23, 1998 judgment because he did not have actual notice of the injunction until September 24, 1998.
As noted above LSA-C.C.P. art. 3605 provides that an order granting a restraining order or injunction is effective against those restrained “from the time they receive actual knowledge of the order.” The only allegation against Mr. Dupuy in the motion for contempt is that he spoke to an assistant attorney general Ron September 21, 1998. Despite the fact that the alleged conduct occurred during the purported term of the void injunction of September 1st, the Court’s order of June 2, 1999 found him guilty of contempt of both injunctions.
The record is undisputed that the second injunction, prohibiting interference with Lucky replacing the machines and prohibiting interference with the State Police reconnecting the machines, was not signed until September 23, 1998, two days after the alleged contemptuous conduct. Thus on the face of the pleadings the injunction did not even exist at the time of the conduct complained of. Therefore it is impossible for Mr. Dupuy to have had actual knowledge of it. Further Mr. Du-puy’s testimony that he did not actually receive the order until after five o’clock on September 24th is unrefuted.
Additionally, a review of the transcript of the hearing reveals that Mr. Dupuy’s testimony is uncontradicted that the conversation occurred on September 21, 1998. Even the Assistant Attorney General involved had no documentation to establish the date and could only say it occurred “last fall, sometime in September.” Thus the proof at the hearing fails to show Mr. Dupuy had actual knowledge of the order at the time he spoke with the Assistant Attorney General. Thus the order issued on September 23rd could not have been effective against him on September 21, 1998.

ASSIGNMENTS:

17Since we have found, for the reasons stated above, that Mr. Dupuy did not violate any valid injunction it necessarily follows that the penalty assessed for the contempt must fall. Therefore, it is unnecessary to consider the propriety of the sanctions actually imposed by the trial court.
For the above and foregoing reasons the judgment of the court below is reversed.
REVERSED.

. The trial court did not specify which injunctions were violated. We presume that she was referring to the orders of September 1, 1998 and September 23, 1998, because those were *1264 the specific orders Lucky claimed were violated in paragraph XII of its "second motion for contempt." Also, she could not in our view have been referring to the order of August 14, 1998 because that order by its own terms expired upon the issuance of the September 1st order.

. The language of the injunction Vanvmncken was'strikingly similar to that at issue here: The judgment of the trial court is as follows: IT IS ORDERED that the said rule be made absolute, and accordingly that a preliminary writ of injunction issue herein as prayed for, upon the plaintiff furnishing bond, according to law in the sum of TWENTY FIVE THOUSAND AND NO/100 ($25,000.00) DOLLARS.
[[Image here]]
The judgment of preliminary injunction does not comply with the requirements of Article 3605 and it is insufficient to constitute a legal preliminary injunction. [Citations omitted.] Since the judgment is improper on its face and'presents no act of appellant for us to examine and pass upon as to its propriety in accordance with the agreement, we simply declare the judgment rendered to be null and void. Id. at 462.

. Regarding the merits of the judgment, we find first, that the judgment is invalid as an injunction because it fails to describe the act or acts being enjoined.... [A] judgment purporting to grant an injunction, but failing to describe the prohibited acts with specificity is void. [Citations omitted].... The judgment here merely renders judgment in favor of the plaintiff and against the defendants "recognizing plaintiff's right to the possession of the property ... as per Attachment A.” It neither specifies acts enjoined nor describes the property involved.... Obviously the judgment is void as an injunction. Id. at 147-148.