CHEHARDY, C.J.
Defendant appeals from a trial court judgment granting a preliminary injunction in favor of his former employer enforcing a non-competition/non-solicitation agreement signed by both parties. For the reasons that follow, we amend the trial court's judgment and affirm the judgment, as amended.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Plaintiff, Wechem, Inc. ("Wechem") is a Louisiana corporation engaged in the manufacture, sale, resale, distribution, and packaging of chemicals, including janitorial, industrial, water treatment and others, and institutional supplies and chemicals. The water treatment chemicals Wechem sells are primarily used in institutional HVAC applications.
Defendant, Will Evans, was formerly employed by Wechem as a sales representative from 1991 until May 2018. At the time of his hire, Evans worked for Wechem on a commission basis with no formal written employment contract. In October 2007, as a condition of his continued employment, Evans was required to enter into a Sales Representative Exclusive Account Contract (the "Agreement"), which contained, among other provisions, an agreement not to compete and an agreement not to solicit customers. Paragraph 8 contained a geographical limitation prohibiting Evans from engaging in any business or selling any products similar to that of Wechem within nine Louisiana parishes and one Mississippi county for a twenty-four month period following his separation of employment with Wechem. Paragraph 10 contained a solicitation prohibition requiring Evans to refrain from selling to or soliciting Wechem's existing customers within the same nine Louisiana parishes and one Mississippi county, also for a period of twenty-four months.
*882 W. Earl Phillips, the president/chief executive officer for Wechem, executed the Agreement on behalf of Wechem on October 4, 2007. Evans initially refused to sign the contract due to concerns that, as written, the Agreement did not protect his future compensation regarding sales commissions. In response to Evans' concerns, Wechem added a compensation addendum, which provided:
The Sales Representative shall be paid pursuant to the current Wechem Commission Policy unless a different commission policy is agreed upon by Company and Sales Representative, and the policy is put in writing and signed by the appropriate Wechem representative.
Once the compensation addendum was incorporated into the employment contract as per Evans' request, Evans signed the Agreement on October 23, 2007. By freely and voluntarily signing the Agreement, Evans conceded that he had read and fully understood "each and every provision" and that he "accept[ed] and agree[d] to the same." Evans worked under the terms and conditions of this Agreement from October 2007 until he separated from Wechem in May 2018.
Pursuant to the compensation addendum, and under the "Wechem Commission Policy" existing at the time the Agreement was confected in 2007, commissions on all of Evans' sales were based on a 50/50 split of the profit amount realized on every sale, and his commission percentage averaged from 27% to 29% of gross sales each year. In the fall of 2017, Wechem announced its plan to modify the commission structure of its sales force. This modification differed from the compensation scheme Wechem had in place in 2007 when Evans executed the Agreement, in that it placed an approximate 18% cap on Evans' sales commissions yielding a decrease in Evans' annual commissions. In 2005, Evans received special training and obtained certification as a water technologist. Due to Evans' specialization in water treatment chemicals, Wechem management recognized that Evans' specialization set him apart from other Wechem sales representatives and that the modified compensation scheme would affect him differently. Thus, as a result of back-and-forth negotiations between Evans and Wechem's CEO, Olin Kropog, it was determined that the company's modified 18% cap on commissions as to Evans would be implemented only as to his sale of janitorial products-the commissions on Evans' sale of water treatment chemicals, which comprised approximately 75-80% of his sales, would remain unchanged.
In an August 18, 2017 email from Kropog to Evans, Kropog memorialized that Wechem was not going to modify Evans' sales commission on water treatment chemicals, but that Wechem would apply the 18% commission to other non-water treatment products he sold. It is undisputed that the email transmitted by Kropog to Evans was sent in Kropog's capacity as the CEO of Wechem and that the email bore Kropog's electronic signature.[1] Evans was paid pursuant to the modified compensation scheme as outlined in Kropog's August 18, 2017 email, from that time through the date of his separation from the company in May 2018.
In November 2017, while still employed with Wechem, Evans began communicating with Bill Buckley, the Senior Vice President/National Sales Manager of Momar, *883 Inc., a direct competitor to Wechem.[2] Thereafter, in April 2018, Evans met with Buckley and Momar's owner, Julian Mohr, to discuss Evans' separation from Wechem and his move over to work as a sales representative for Momar. Also while still employed with Wechem, Evans became aware that one of the Mississippi customers he serviced for Wechem had advertised a request for public bid to supply water treatment chemicals. Evans withheld information regarding the upcoming bid opening from Wechem management. Instead, in anticipation of his transfer to Momar and in an attempt to obtain this customer's account for Momar, Evans provided Buckley with information regarding Wechem's contract with this Mississippi customer, which included Wechem's pricing structure and bid package. Additionally, prior to leaving Wechem, Evans admittedly contacted at least three of Wechem's existing customers in an attempt to solicit them to transfer their business to Momar, where he would soon be employed.
According to Evans, his resignation from Wechem on May 30, 2018 was a direct consequence of Wechem's change in its commission policy and the resulting loss of his commission earnings.[3] Upon leaving, Evans immediately began working as a sales representative for Momar selling many of the same and/or similar products sold by Wechem, as well as other products that Wechem does not carry, and providing testing and treatment services. Additionally, within the first weeks of working for Momar, Evans targeted and tried to sell water treatment chemicals to customers that he had previously serviced while employed at Wechem.[4]
Also soon after Evans' departure from Wechem, several of Wechem's customers advised Wechem that they were "moving in a different direction" and were no longer in need of Wechem's services. Evans conceded that he solicited several of these customers to move their business with him to Momar. According to Wechem, it did not become aware that Evans was in violation of the Agreement until August 2018, when a Wechem salesman attempted to make a sales call on one of its customers and was apprised that Evans had solicited the customer's water treatment business for Momar. Additionally, during his sales calls of former and existing Wechem customers, the Wechem salesman discovered Momar chemicals on the premises of several of these customers.
After obtaining confirmation that Evans was in breach of the Agreement, Wechem sent a cease and desist letter to Evans and the owner of Momar via certified mail on September 7, 2018. Thereafter, on October 11, 2018, Wechem filed suit against Evans, seeking preliminary and permanent injunctions against him for violation of the Agreement's non-competition and non-solicitation provisions and for damages for breach of contract. Specifically, Wechem's petition sought to restrain and enjoin Evans *884 for a period of twenty-four months from the date of his separation of employment with Wechem from (1) working for Momar and/or any other competitor of Wechem in Hinds County, Mississippi, and nine Louisiana parishes, and (2) from directly or indirectly soliciting or encouraging any Wechem customer to move its business to Momar.
A hearing on the preliminary injunction was held on October 31, 2018. At the conclusion, the trial court orally rendered judgment granting Wechem's request for a preliminary injunction, finding that Wechem would suffer irreparable injury, loss or damage if the preliminary injunction was not issued; that Wechem was entitled to the relief sought; and, that Wechem had carried its burden of showing that it was likely to prevail on the merits. The trial court ruled that Evans was prohibited from working for any Wechem competitor, including Momar, in Hinds County, Mississippi and in the nine Louisiana parishes set forth in the Agreement. The trial court also prohibited Evans from directly or indirectly soliciting any Wechem customers that purchased Wechem products while Evans was employed by Wechem. A written preliminary injunction was entered on October 31, 2018.
The instant appeal ensued.
ISSUES PRESENTED FOR REVIEW
On appeal, Evans avers that the trial court erred: (1) by enforcing the non-competition Agreement between himself and Wechem, which Wechem purportedly breached by not paying Evans in accordance with the Agreement's compensation addendum; (2) by enjoining Evans from working in parishes in which Wechem failed to establish that it was carrying on a "like business" as required by La. R.S. 23:921(C) ; (3) by issuing an order that, effectively, prevents Evans from any employment with his current employer, regardless of whether such employment is "in competition" as is required by La. R.S. 23:921 ; and (4) by issuing an order that fails to sufficiently describe the prohibited conduct and/or is otherwise impermissibly overly broad.
LAW AND DISCUSSION
Applicable Legal Principles
A preliminary injunction is essentially an interlocutory procedural device designed to preserve the status quo between the parties pending a trial on the merits. Novelaire Techs., L.L.C. v. Harrison , 08-157 (La. App. 5 Cir. 8/19/08), 994 So.2d 57, 60. The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage to the applicant. Ryan Gootee Gen. Contractors, LLC v. Plaquemines Par. Sch. Bd. & One Const., Inc. , 15-325 (La. App. 5 Cir. 11/19/15), 180 So.3d 588, 598. Although the judgment on a preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612.
Typically, a trial court is granted wide discretion in determining whether an injunction is warranted, and its issuance of a preliminary injunction will not be disturbed on appeal absent manifest error or a clear abuse of discretion. Yorsch v. Morel , 16-662 (La. App. 5 Cir. 7/27/17), 223 So.3d 1274, 1281, writ denied , 17-1475 (La. 11/13/17), 230 So.3d 207. However, where the trial court's decision is based on an erroneous interpretation or application of the law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. West Carroll Health Sys., L.L.C. v. Tilmon , 47,152 (La. App. 2 Cir. 5/16/12), 92 So.3d 1131, 1133.
*885 Historically, Louisiana has disfavored non-competition agreements. SWAT 24 Shreveport Bossier, Inc. v. Bond , 00-1695 (La. 6/29/01), 808 So.2d 294, 298. Louisiana's strong public policy restricting these types of agreements is premised on an underlying state objective to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden.[5] Id. ; see also H2O Hair, Inc. v. Marquette , 06-930 (La. App. 5 Cir. 5/15/07), 960 So.2d 250, 258. Such agreements are deemed to be against public policy, except under limited circumstances delineated by statute. The applicable statute is La. R.S. 23:921, which provides, in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
* * *
C. Any person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
* * *
H. Any agreement covered by Subsections B, C, E, F, G, J, K, or L of this section shall be considered an obligation not to do, and failure to perform may entitle the oblige to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
To be valid, non-competition and non-solicitation agreements must comply with La. R.S. 23:921. Although non-competition agreements are separate and distinct from non-solicitation agreements, the requirements of La. R.S. 23:921 apply to both. See VarTech Systems, Inc. v. Hayden , 05-2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 260. La. R.S. 23:921(C) is an exception to Louisiana public policy against non-competition agreements and, as such, must be strictly construed. H2O Hair, Inc. , 960 So.2d at 259.
In order to determine whether the employer has carried its burden of proving its right to injunctive relief, the court must consider the validity and enforceability of the agreement sought to be enforced by the employer. See SWAT 24 , 808 So.2d at 294 ; H2O Hair, Inc. , 960 So.2d at 259. And even though La. R.S. 23:921(H) mandates the issuance of injunctive relief without the necessity of proving irreparable harm when the obligor's failure to perform is established, the employer *886 still bears the burden of proving that it is entitled to relief.[6] Clear Channel Broadcasting, Inc. v. Brown , 04-0133 (La. App. 4 Cir. 3/30/05), 901 So.2d 553, 558.
A non-competition agreement may limit competition only as to a business similar to that of the employer, in a specified geographic area and for up to two years from termination of employment. Paradigm Health System, L.L.C. v. Faust , 16-1276 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068, 1072. Where the actions the employer seeks to enjoin pursuant to a non-competition agreement do not fall within the exception found in La. R.S. 23:921(C), or where the agreement is found to be unenforceable for failure to conform to La. R.S. 23:921, the employer seeking enforcement is unable to carry its burden of establishing that it is entitled to the relief sought. See SWAT 24 , 808 So.2d at 307 ; H2O Hair, Inc. , 960 So.2d at 259.
The Employment Agreement
With these legal precepts in mind, we turn to the employment Agreement executed between Wechem and Evans in 2007. The Agreement provides as follows, in pertinent part:
1. Company hereby employs Sales Representative, and Sales Representative hereby accepts employment by Company as a Sales Representative to solicit sales of Company's own line of products to accounts in the designated territory, upon the terms and conditions set forth below. The Sales Representative shall be required to devote (sufficient) time to perform the duties that the Company may require of him/her, including all activities, requirements of the chemical sale business, and training sessions offered by the Company. Company reserves the right to assign the Sales Representative to different and other further employment duties and responsibilities other than those defined herein. Notwithstanding said change and assignment, all terms and provisions of this agreement shall remain in full force and effect.
* * *
8. Sales Representative hereby expressly agrees that during the term of employment and for a period of twenty-four (24) months following the termination of employment hereunder, whether such termination is voluntary or involuntary, Sales Representative will refrain from carrying on or engaging in any business similar to that of Company within the parishes/counties listed in Attachment "A" which attachment can be revised at the Company's discretion. Should any changes be made to Attachment "A," Sales Representative will receive written notification of the change at which time the revised Attachment "A" will be incorporated into this Agreement. Sales Representative will not for or on behalf of Sales Representative or on behalf of any proprietorship, partnership or corporation which engages in a business similar to that of Company, directly or indirectly within the parishes/counties specified in Attachment "A," sell or attempt to sell or solicit the sale of any products of the same or similar *887 kind as is offered or sold by Company at anytime during his employment with the Company.
* * *
10. Sales Representative hereby expressly agrees that during the term of employment hereunder and prepared in twenty-four (24) months following the termination of employment hereunder, whether such a termination is voluntary or involuntary, Sales Representative will not, for or on behalf of Sales Representative or any person, persons, partnership, or corporation (except Company), directly or indirectly, within the parishes/counties specified in Attachment "A," solicit or attempt to solicit the sale of any products of the same or similar kind as those offered or sold by Company at any time during the twenty-four (24) month period immediately preceding the termination of Sales Representative's employment hereunder, to any person, partnership, or corporation who is solicited from the sale of or was sold any such products by the Sales Representative or any other Sales Representative employed by Company.
The agreement specifically delineates that the geographic area to which the agreement applies is Hinds County, Mississippi, and the following nine Louisiana parishes: East Baton Rouge; East Feliciana; Orleans; St. John; West Baton Rouge; Jefferson; West Feliciana; St. Charles; and, Livingston. In addition, there is a clause requiring the sales representative to maintain confidentiality of Wechem's trade secrets and/or confidential information, including customer lists, pricing policies, prices, product development plans, and market strategies. Further, the parties agreed that Wechem is entitled to injunctive relief to prevent or curtail any breach of the Agreement by the sales representative. Finally, the parties agreed that Evans would be paid pursuant to the commission policy Wechem had in effect at the time the Agreement was executed, and that any change in the commission policy would have to be: (1) agreed to by both Wechem and Evans; (2) put in writing; and (3) be signed by the Wechem representative.
Breach of the Agreement
In his first assignment of error, Evans contends that Wechem's modification to his compensation scheme in August 2017 constituted a breach of the Agreement rendering the non-competition/non-solicitation provisions invalid and unenforceable under La. R.S. 23:921(C). Specifically, Evans contends Wechem was in breach of the Agreement because the change to the company's compensation policy was unilateral as he never agreed to it, the change was not issued by Wechem "in writing," and the change was not signed by the appropriate Wechem representative, as required by the terms of the Agreement's compensation addendum. In short, Evans argues the trial court committed legal error by failing to take Wechem's breach of the Agreement into consideration when granting Wechem's request for a preliminary injunction. We disagree.
At the hearing, Evans conceded in his testimony that discussions and negotiations did take place between himself and Wechem's then CEO, Kopog, regarding Wechem's proposed modification:
Q. Isn't it true that you and management at Wechem entered into a discussion and negotiation as it related to the commission structure for your water treatment business?
A. Yes. I had to -- I had to fight to continue getting the commissions I'd been getting for twenty-six years of service to Wechem.
Q. Isn't it true that at the end of the day, Wechem agreed to pay you the commissions that you have previously *888 gotten for your water treatment business throughout the entire time you were at Wechem?
A. Yes. But the other roughly half of my business, the commissions were cut significantly.
Also at the hearing, Wechem's CFO, Christine Jones, testified that when she researched Evans' accounts, she was able to determine that his water treatment business comprised approximately 75-80% of his accounts on which the sales commissions he received would remain the same. The remaining 20-25% of Evans' business consisted of non-water treatment, or janitorial, accounts; under the modified commission structure, the sales commissions that he would receive on these accounts were subject to a flat 18% commission. Jones determined that as a result of the reduction in commissions on Evans' janitorial sales, Evans' overall compensation was decreased by 6%. In order to offset some of the income loss Evans was to incur as a result of the modification, Jones testified that Wechem gave him a new account. While Jones testified that under the new commission policy Evans was due to make "somewhat less money," there was the opportunity for him to make more money.
Contrary to Evans' contention that Wechem's modification to the commission policy was "unilateral" and that he never agreed it, we find that the evidence adduced at the hearing established that the modification to Evans' particular commission scheme was actually the result of negotiations between himself and Wechem management. And while Evans contends that he never agreed to the modification as required by the Agreement, the testimony at the hearing established that Evans worked under the modified commission policy without complaint from August 2017 until his separation from Wechem in May 2018, suggesting that Evans tacitly agreed to the modification.
We also find that the August 18, 2017 email transmitted by Kopog to Evans, wherein Kopog memorialized Wechem's commission policy for Evans was sufficient to meet the "writing" requirement of the Agreement's compensation addendum. Further, Evans does not dispute that the email was transmitted by Kopog, Wechem's CEO, or that the email contained Kopog's signature block:
Q. And isn't it true that Olin [Kopog] said to you in this document that he was not changing the commission structure on the water treatment chemicals?
A. Yes, he did. And I ask that this be put in -- formally put in writing to guarantee that they would never be, and I was told no.
Q. And that's a writing right there, isn't it?
A. I don't call that a contract.
Q. Do you call it a writing?
A. A writing. Yes.
Q. Is that an electronic signature at the bottom of this document?
A. I suppose it is. Yeah.
Furthermore, the law in Louisiana is clear that written contracts may be modified by oral contracts and the conduct of the parties, even in contracts that specify that any changes to the contract must be in writing. See Aqua Pool Renovations, Inc. v. Paradise Manor Community Club, Inc. , 04-119 (La. App. 5 Cir. 7/27/04), 880 So.2d 875, 880. Additionally, modification of a written agreement can be presumed by silence, inaction, or implication. Lantech Const. Co., L.L.C. v. Speed , 08-811 (La. App. 5 Cir. 5/26/09), 15 So.3d 289, 293-294. Whether there is an oral agreement that modified the written contract is a question of fact. Id. ; see also *889 Driver Pipeline Co. v. Cadeville Gas Storage, LLC , 49,375 (La. App. 2 Cir. 10/1/14), 150 So.3d 492, 501, writ denied , 14-2304 (La. 1/23/15), 159 So.3d 1058. In the case sub judice , the evidence and testimony introduced at the hearing reflects that Evans worked under the modified compensation scheme for over nine months without complaint. There is nothing in the record to suggest that he rejected the compensation modifications as set forth in the August 18, 2017 email he received from Kopog.
Based on our review of the record, whether the Agreement's compensation addendum was orally modified or done so by written agreement, we find the evidence insufficient to establish that Wechem breached the Agreement as Evans contends. The evidence and testimony adduced at the hearing show that although Wechem made the initial decision that a change in its commission policy for all of its sales representatives was necessary, the actual modification to Evans' commission structure, in particular, was not a unilateral change, but rather, a result of negotiations that took place between Evans and Wechem management. Following those negotiations, the final terms of the modification to Evans' commission scheme were reduced to writing and provided to Evans in a written email, which Evans acknowledged was electronically signed by Kopog, Wechem's CEO. Thereafter, Evans worked under, and received payments pursuant to, the modified compensation policy for an additional nine months prior to his separation from the company, without evidence of complaint. Accordingly, we find the record evidence does not support Evans' contention that Wechem's modification to his commission scheme, whether oral or written, constituted a breach of the Agreement nullifying the non-compensation/non-solicitation provisions.
The Validity and Enforceability of the Agreement's Non-Competition/Non-Solicitation Provisions
We further find that the trial court did not err in concluding that the Agreement's non-competition/non-solicitation provisions comport with La. R.S. 23:921 and are enforceable. The statute permits an employer to prohibit its employee, for a period not to exceed two years, "from carrying on or engaging in a business similar to that of the employer ..." and from soliciting the employer's customers within specified parishes where the employer carries on a like business. La. R.S. 23:921(C). It is undisputed that the Agreement's non-competition/non-solicitation provisions comply with the statute's two-year maximum duration requirement and specifically elucidate the nine Louisiana parishes and one Mississippi county in which Evans is restrained.
Further, "[t]o comply with Louisiana law, a covenant-not-to compete agreement must specifically define the employer's business." Daquiri's III on Bourbon, Ltd. v. Wandfluh , 608 So.2d 222, 225 (La. App. 5th Cir. 1992). In the instant case, the Agreement's preamble explicitly states that Wechem is engaged in the "manufacture, sale, resale, distribution, and packaging of chemicals, including janitorial, industrial, water treatment and others and institutional supplies and chemicals." Evans suggests that because Wechem, in its brief, more particularly described its business as "sell[ing] janitorial supplies and water treatment chemicals used in HVAC machinery," this is an acknowledgement that the definition of Wechem's business as stated in the Agreement's non-competition/non-solicitation provisions is "patently" overly broad in violation of Louisiana law and, thus, the provisions are null and void. To the contrary, the Agreement's non-competition/non-solicitation provisions *890 specifically prohibit Evans from selling, attempting to sell, or soliciting the sale of any janitorial, industrial, or water treatment chemicals and institutional supplies for or on behalf of a Wechem competitor that are the same or similar to any of the chemicals and supplies Wechem sold while Evans was employed there. We do not find the Agreement's definition of Wechem's business to be overly broad or in violation of Louisiana law.
Evans further contends that the Agreement's language is overly broad in that it acts to limit Evans from working in any capacity with a competitor. We disagree. We find the Agreement's language operates to prohibit only those actions by Evans which directly or indirectly compete with Wechem's business- i.e. , selling, or soliciting to sell, janitorial, industrial, or water treatment chemicals and institutional supplies like or similar to those products sold by Wechem.
For the reasons stated, we find the Agreement validly operates to prevent Evans from leaving Wechem's employ and competing in a business in direct or indirect competition with Wechem's business for a period of two years within a specifically defined geographical area. In short, the Agreement's language falls within the permissible bounds of La. R.S. 23:921. At the hearing, Evans, who was employed with Wechem for 26 years and knew full well the nature of Wechem's business, testified that the work he now performs for his new employer, Momar, is in direct competition with Wechem's business. Evans also admitted that, both before and after his separation from Wechem, he solicited Wechem clients to move their water treatment business from Wechem with him to Momar. Such actions violated the Agreement's non-competition and non-solicitation provisions. Accordingly, the trial court did not err in its determination that the Agreement's non-competition/non-solicitation provisions are valid and enforceable against Evans. This assignment of error is without merit.
Whether Wechem Carried its Burden of Proving Its Right to a Preliminary Injunction
In this assignment of error, Evans contends that Wechem failed to carry its burden of establishing its right to injunctive relief in the proscribed parishes of St. John, West Baton Rouge, West Feliciana, Livingston and St. Charles because Wechem failed to introduce any evidence at the hearing showing that it was carrying on a "like business" in each of these parishes. Further, Evans argues that one of the locations sought to be enjoined, Iberville Parish, was not included in the Agreement's list of proscribed parishes and thus, the injunction should be dissolved as to Iberville Parish. Evans further contends that Wechem failed to present sufficient evidence to establish its right to injunctive relief in the parishes of East Feliciana, Orleans and East Baton Rouge.
It is well established that an applicant seeking a preliminary injunction need only make a prima facie showing that he will prevail on the merits; thus, less proof is required than in an ordinary proceeding for a permanent injunction where the burden of proof is a preponderance of the evidence. See Sorrento Companies, Inc. v. Honeywell Int'l, Inc. , 04-1884 (La. App. 1 Cir. 9/23/05), 916 So.2d 1156, 1163, writ denied , 05-2326 (La. 3/17/06), 925 So.2d 541 ; State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry , 95-0391 (La. App. 1 Cir. 11/9/95), 664 So.2d 1216, 1220 ; and Hailey v. Panno , 472 So.2d 97, 99 (La. App. 5th Cir. 1985). Moreover, La. R.S. 23:921 contemplates that the parishes specified in the Agreement must be parishes where the ex-employer *891 actually has a location or customers. Cellular One, Inc. v. Boyd , 94-1783 (La. App. 1 Cir. 3/3/95), 653 So.2d 30, 33, writ denied , 95-1367 (La. 9/15/95), 660 So.2d 449. Employers are not permitted to lock former employees out of markets in which the employer does not operate. Id.
In order to enforce a non-competition agreement seeking to have an employee "refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers" within a certain geographical area, La. R.S. 23:921 requires the employer to specify in the Agreement the "parish or parishes, municipality or municipalities, or parts thereof," where the employer is carrying on a like business. In the instant case, in accordance with the statute, Wechem specifically set forth in the Agreement, which was admitted into evidence, the nine Louisiana parishes and one county in Mississippi wherein it was conducting business and to which the non-competition/non-solicitation provisions would apply. We find this sufficient evidence to establish a prima facie showing that Wechem was conducting business in those parishes for purposes of establishing a right to a preliminary injunction in this matter.
In VarTech , the defendants argued that the geographic limitation contained in the non-competition agreements at issue, which specifically listed all 64 parishes in the state as those to which the agreements would apply, was overly broad in that it included parishes in which VarTech did not do business. In upholding the injunction in favor of VarTech in all 64 parishes without evidence of doing "like business" on a parish-by-parish basis, the First Circuit noted that (1) the statute contemplates that the parishes the employer specifies in the agreement are those in which it has a location or customers, and (2) the defendants failed to offer any proof to show that the specification made by VarTech in its agreement was invalid. VarTech , 951 So.2d at 258 ; see also Hose Specialty & Supply. Co. v. Guccione , 03-823 (La. App. 5 Cir. 12/30/03), 865 So.2d 183, 194.
At the preliminary injunction hearing, Evans admitted to soliciting customers in Orleans, Jefferson, East Baton Rouge and East Feliciana Parishes, in addition to Hinds County, Mississippi. According to the Agreement, Wechem was also carrying on "like business" in the parishes of St. John, West Baton Rouge, West Feliciana, Livingston and St. Charles. There was no evidence adduced showing that the geographic locations specified by Wechem in the Agreement were invalid; i.e. , that they were not carrying on a like business in these parishes. See VarTech , 951 So.2d at 258 ; Hose Specialty & Supply. Co. v. Guccione , 865 at 194,. Thus, in the absence of such evidence in connection with Wechem's request for a preliminary injunction, we find no error in the trial court's finding that the geographic bounds set forth in the Agreement comply with the requirements of La. R.S. 23:921 and should be enforced for preliminary injunction purposes.[7] This assignment of error lacks merit.
*892 The Enforceability of the Trial Court's Order Granting Injunctive Relief
In his remaining assignments of error, Evans contends that the trial court erred in issuing a preliminary injunction that is overly broad and unenforceable under La. R.S. 23:921(C) because it prevents Evans from working in any capacity for any competitor of Wechem, including Momar, in the proscribed parishes. Alternatively, Evans avers that the trial court's order is null and void because it does not reasonably describe the prohibited conduct as required by La. R.S. 23:921. Evans also argues that, in contravention of the statute, the preliminary injunction impermissibly prohibits all solicitation without regard to any geographical limitation. We find these assignments of error have merit.
While we have determined that the Agreement's non-competition/non-solicitation provisions comport with the requirements of La. R.S. 23:921(C) and, as such, are enforceable, and that Wechem has made a prima facie showing that it is entitled to a preliminary injunction in this matter, we find that the portion of the trial court's judgment that enumerates the prohibited conduct goes beyond the restrictive contractual language contained in those provisions and thus is, as written, null and void. The trial court's order provides, in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED that WECHEM, Inc.'s Request for Preliminary Injunction is hereby GRANTED, and that Will Evans is prohibited from working for any Wechem competitor in the geographic area listed in the Agreement including but not limited to Momar; and that Will Evans is prohibited from directly or indirectly soliciting any Wechem customer that purchased Wechem products while Will Evans was employed by Wechem.
La. C.C.P. art. 3605 states that a preliminary injunction "shall describe in reasonable detail, and not by mere reference to the petition or other documents , the act or acts sought to be restrained." [Emphasis supplied.] Therefore, a judgment purporting to grant a preliminary injunction without describing the prohibited conduct with specificity would be null and void. Bernhard MCC, LLC v. Zeringue , 250 So.3d 342, 348 (2018) ; Phillips' Bar & Rest., Inc. v. City of New Orleans , 12-1396 (La. App. 4 Cir. 4/24/13), 116 So.3d 92, 108, writs denied , 13-1410 (La. 10/11/13), 123 So.3d 1226, and 13-1417 (La. 10/11/13), 123 So.3d 1227 ; Ormond Country Club v. Dorvin Developments, Inc. , 498 So.2d 144, 148 (La. App. 5 Cir. 1986), writ denied , 500 So.2d 423 (La. 1987). In Bernhard MCC, LLC , the only valid judgment of injunction contained absolutely no statement or description of the prohibited conduct. It simply stated that the plaintiff's petition for injunctive relief against the defendants "be and is hereby GRANTED ." Bernhard MCC, LLC , 250 So.3d at 348. This Court determined that because the judgment purporting to grant injunctive relief contained no language regarding the acts sought to be restrained, the judgment as written was null and void pursuant to La. C.C.P. art. 3605 and, therefore, we vacated the judgment and remanded the matter to the trial court for further proceedings.[8] Id. at 349.
*893 Unlike Bernhard , the judgment in the instant case, which grants the preliminary injunction, indeed contains a description therein of the prohibited conduct; however, the description of the prohibited conduct does not conform to the evidence introduced and the conduct proscribed in the Agreement upon which the judgment is based, and lists only by reference to the Agreement the geographical areas to which the injunction applies. Consequently, the judgment is impermissibly vague and overbroad and not sufficiently specific based upon the evidence presented. Specifically, the Agreement prohibits Evans, for or on behalf of any competitor of Wechem, directly or indirectly, from selling, attempting to sell, or soliciting the sale of products that are the same or similar to those products offered or sold by Wechem while Evans was in its employ. The prohibition is for a period of twenty-four months and is restricted to a specified geographical area. The trial court's injunctive order, however, instead of tracking the Agreement's language-which we find permissible-not only prohibits Evans from selling or soliciting the sale of the same or similar products for a Wechem competitor, it restricts Evans' from working in any capacity for a Wechem competitor "in the geographic area listed in the Agreement."[9] The order contains no limitation on what type of work Evans is prohibited from pursuing.
In Yorsch v. Morel , supra , this Court held that a valid non-competition agreement may not prevent an employee from working in areas outside of his former employment.[10] Yorsch , 223 So.3d at 1281. Similarly, we conclude that a trial court may not issue a preliminary injunction which prohibits an employee from working in an area outside of his former employment. In the case sub judice , the scope of the trial court's order prohibiting Evans from working in any capacity for a competitor of Wechem goes not only beyond that permitted by La. R.S. 23:921, but also goes beyond the actual scope of the Agreement. Consequently, we will amend the injunctive order in this respect to conform exactly with the language of the restriction set forth in the Agreement. See Fern Creek Owners' Ass'n, Inc. v. City of Mandeville , 08-1694 (La. App. 1 Cir. 6/30/09), 21 So.3d 369, 380 ; Gold & Suckle, Inc. v. Suckle , 335 So.2d 713, 717-718 (La. App. 2nd Cir.), writ denied , 338 So.2d 700 (La. 1976).[11]
*894 Additionally, non-competition and/or non-solicitation provisions that do not comply with La. R.S. 23:921, in that they do not adequately specify the geographic restrictions, are unenforceable. Yorsch , 223 So.3d at 1287, 1288. Similarly, we hold that a preliminary injunction that seeks to enjoin an employee from engaging in prohibited conduct, but does not specify the geographic limitations, is also null and void. In the instant case, one cannot ascertain from the trial court's order, as written, the applicable geographic area wherein Evans is enjoined from engaging in competing business or from soliciting Wechem customers. Therefore, we will amend the injunctive order in this regard to track the geographic area set forth in the Agreement. See Fern Creek , 21 So.3d at 380 ; Gold & Suckle, Inc. , 335 So.2d at 717-718.
CONCLUSION
For the foregoing reasons, we find, as a matter of law that the Agreement's non-competition and non-solicitation provisions comport with La. R.S. 23:921 and, thus, are valid and enforceable, and find that Wechem has made a prima facie showing that it is entitled to a preliminary injunction in this matter. Therefore, pursuant to the authority granted to appellate courts by La. C.C.P. art. 2164, to "render any judgment which is just, legal, and proper upon the record on appeal[,]" we hereby amend the trial court's October 31, 2018 order issuing a preliminary injunction in favor of Wechem, Inc. and against Will Evans to track the language of the Agreement's non-competition/non-solicitation provisions. Accordingly, Will Evans is prohibited from acting on behalf of himself or a competitor of Wechem, Inc. that is engaged in a business similar to the type of business conducted by Wechem, Inc., including but not limited to Momar, Inc., directly or indirectly: (1) from selling, attempting to sell, or soliciting, the sale of any janitorial, industrial, water treatment chemicals or products and industrial supplies that are of the same or similar kind as the chemicals, products, or supplies offered or sold by Wechem at any time during Evans' employment with Wechem; and (2) from soliciting or attempting to solicit any customer of Wechem, Inc. that purchased products from Wechem at any time during Evans' employment with Wechem. These prohibitions shall last for a period of twenty-four months from May 30, 2017, the date of Evans' separation from Wechem, Inc., and their application is restricted to the Louisiana parishes of East Baton Rouge, East Feliciana, Orleans, St. John, West Baton Rouge, Jefferson, West Feliciana, Livingston, and St. Charles, and Hinds County, Mississippi.
*895 JUDGMENT AMENDED; JUDGMENT AFFIRMED, AS AMENDED.

Though in Evans' brief on appeal, his counsel argues that the signature block on Kropog's email did not constitute an electronic signature, at the hearing on the preliminary injunction, Evans conceded that the email constituted a "writing" and that it bore an electronic signature at the bottom of the email document.

Both Wechem and Momar sell janitorial supplies and water treatment chemicals used in HVAC machinery.

Evans contends that Wechem has not paid commissions owed to him in accordance with the Agreement's compensation addendum from the fall of 2017 through the date of his resignation in May 2018.

Wechem avers that, in contravention of the Agreement, Evans has sold products to the following entities: DHH East LA Mental Hospital (East Feliciana Parish); Mahalia Jackson Arts Center (Orleans Parish); Neuromedical Center (East Baton Rouge Parish); Trademark Property Company (East Baton Rouge Parish); Johnson Controls for Elayn Hunt Correctional Center (whose business offices are located in East Baton Rouge Parish and its facility is located in Iberville Parish); and Jefferson Parish - General Services.

"[T]he Civil Code limits individuals' rights in other areas where a derogation of such rights would result in the individual becoming a public burden. An individual is forbidden from divesting himself of all his property by a donation inter vivos. La. C.C. art. 1497. Also, the right to contract not to compete is limited. La. R.S. 23:921. 'Both of these situations demonstrate the underlying state concern that a person cannot by convention deprive himself of the ability to support himself.' Note, Louisiana's Forbidden Antenuptial Waiver of Alimony Pendente Lite , 39 La.L.Rev. 1161, 1168 (1979)." McAlpine v. McAlpine , 94-1594 (La. 9/5/96), 679 So.2d 85, 91.

In general, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue, and must establish a prima facie showing that it is entitled to the relief sought; that is, that the party will likely prevail on the merits of the case. H2O Hair, Inc. , 960 So.2d at 259. However, when an employee enters into an agreement with his employer not to compete and fails to perform his obligation under the agreement, pursuant to La. R.S. 23:921(H), the court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of the employee's breach of the non-competition agreement. Id.

We note that the trial court may reach a different conclusion following a full trial on the merits of the permanent injunction, where the burden of proof is higher. In Class Action Claim Services, LLC v. Clark , 04-591 (La. App. 5 Cir. 12/14/04), 892 So.2d 595, 600, this Court held a clause containing geographic limitations was severable from the remainder of the non-competition agreement. We stated: "Our review of the jurisprudence indicates that when a non-compete clause is overbroad in its geographical boundaries, the court should delete the overbroad portions and enforce the remainder of the geographic restriction provision." Id. See also , CBD Docusource, Inc. v. Franks , 06-167 (La. App. 5 Cir. 6/28/06), 934 So.2d 307, 310.

The case upon which Bernhard relied, namely Phillips' Bar & Rest., Inc. v. City of New Orleans , 12-1396 (La. App. 4 Cir. 4/23/13), 116 So.3d 92, 108, writs denied , 13-1410 (La. 10/11/13), 123 So.3d 1226 and 13-1417 (La. 10/11/13), 123 So.3d 1227, also considered a judgment of injunction with no description of the prohibited conduct and, thus, the judgment was null and void under La. C.C.P. art. 3605. See also Lucky Coin Machine v. Hillensbeck, 00-0313 (La. App. 4 Cir. 1/31/01), 778 So.2d 1262, 1264 ; Vanvrancken v. Roy , 296 So.2d 460, 462 (La. App. 4th Cir. 1974).

In particular, Evans argues the trial court's order, as written, prohibits him from performing "any work for his current employer" and from selling any Momar products regardless of whether the work/products actually compete with Wechem's business.

In Yorsch , this Court held that a non-competition provision that placed impermissibly broad restrictions on a member of limited liability companies was null and void under La. R.S. 23:921 because it prohibited the member not only from engaging in competing activities, but also from rendering services of any kind to a competitor, and also did not adequately specify the geographic scope. Yorsch , 223 So.3d at 1286-87. We also determined that a non-solicitation provision failed to comply with La. R.S. 23:921 because it lacked a geographical limitation. Id. at 1288.

In Fern Creek , 21 So.3d at 380, the First Circuit addressed the merits of a judgment granting an injunction and determined that while the granting of injunctive relief was proper, the judgment of injunction, which described prohibited conduct, was "impermissibly vague and overbroad" in that it did not conform to the clear evidence presented at trial or the specific relief that was sought. Consequently, the appellate court proceeded to amend the judgment, and then affirmed the judgment as amended, to-wit:
In its second assignment of error, the City complains that the trial court's judgment is "vague" and enjoins activities not violative of the building restrictions. Louisiana Code of Civil Procedure article 3605 requires that "[a]n order granting ... a final injunction ... shall describe in reasonable detail, and not be mere reference to the petition and other documents , the act or acts sought to be restrained." (Emphasis added.) See, e.g. , Miller v. Knorr , 553 So.2d 1043 (La. App. 4th Cir. 1989), in this the judgment failed to describe an act sought to be restrained. We agree that the first numbered decretal paragraph of the judgment is impermissibly vague and overbroad based upon the foregoing standard, and should describe the enjoined activities with more detail, limited to those violations of the building restrictions that were proven at trial. We will accordingly amend that paragraph of the judgment to limit the injunction to those violations relating to the payment of Association dues or assessments by the City, the driveway, culvert, fence, equipment and machinery, debris and trash, and drainage pipe, as described in the following paragraphs. We will also amend certain other paragraphs of the judgment to provide the detail required by La. C.C.P. art. 3605, in conformity with the intent and tenor of the judgment and the evidence . [Bold emphasis added. Footnote deleted.]